SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

<u>State v. Thomas Shannon</u> (A-111-13) (074315)

**Argued April 27, 2015 -- Decided August 19, 2015**

**PER CURIAM**

      In this appeal, the Court considers whether evidence seized after defendant's arrest, made in the absence of a valid warrant or probable cause, is subject to exclusion without application of an exception based on the subjective good faith of the executing officers, who relied upon an arrest warrant that had been judicially vacated but had not been removed from the computer database showing active warrants.

      On March 26, 2009, a municipal court judge issued a warrant for defendant's arrest for non-payment of fines owed in connection with a criminal conviction and a motor vehicle violation. Defendant learned of the warrant, and wrote to the municipal court requesting that the fines be vacated based on hardship. On April 16, 2010, a municipal court judge granted defendant's request.

      When a judge vacates a fine, the disposition is entered in the relevant database and the outstanding warrant in that database also is vacated. Municipal court employees, not the police department, are responsible for entering that information. Notably, separate computer databases are used for traffic violations and criminal matters. In this case, a deputy municipal court administrator properly vacated the fines in the traffic system, but failed to vacate the fines in the criminal matter. As a result, the criminal complaint database did not reflect that the fines were vacated, and, correspondingly, the arrest warrant associated with those fines was not vacated.

      On October 18, 2011, a dispatcher directed an Asbury Park police officer to 835 Dunlewy Street to investigate a report of a suspicious vehicle parked in front of the residence. The officer found defendant sitting in a vehicle meeting the reported description, and defendant explained that he was waiting for a friend in a nearby house. The officer asked dispatch to run a warrant check, and dispatch advised the officer that defendant had an outstanding arrest warrant. Defendant was placed under arrest, and the officer brought defendant to the police station in his patrol car. During the trip, the officer noticed that defendant was moving around in the back seat. After defendant was removed from the vehicle, the officer noticed suspected cocaine on the back seat and white residue on defendant's fingers. The officer found additional suspected controlled dangerous substances under the bench seat in the back of the car. The substances found in the vehicle were seized as evidence. None of the officers involved in the case were aware that the warrant on which defendant was arrested had been vacated.

      Defendant was indicted for third-degree possession of a controlled dangerous substance (CDS), and second degree possession of a CDS with intent to distribute. Defendant moved to suppress the evidence seized from the police vehicle, contending that the officer's questioning and warrant check were unconstitutional. Following a hearing at which only the arresting officer testified, the court denied defendant's motion. On the eve of trial, defendant asked the court to reopen his suppression motion, relying on a letter from the municipal court, dated April 21, 2010, which indicated that his fines had been vacated. The court reopened defendant's motion, and, following a hearing at which the municipal court administrator testified, granted the motion to suppress. The court found that defendant was arrested unlawfully, the drugs seized from the vehicle were inadmissible fruits of an unlawful arrest, and that the lack of culpability of the police department was irrelevant.

      The Appellate Division granted the State's motion for leave to appeal, and affirmed the trial court's suppression of the evidence. This Court granted the State's motion for leave to appeal. 218 <u>N.J.</u> 528 (2014).

**HELD:** The judgment of the Appellate Division is affirmed by an equally divided Court. The arresting officer's good faith belief that a valid warrant for defendant's arrest was outstanding cannot render an arrest made in the absence of a valid warrant or probable cause constitutionally compliant.

**JUSTICE LaVECCHIA, CONCURRING, joined by CHIEF JUSTICE RABNER and JUSTICE ALBIN,** expresses the view that an officer's subjective, good faith belief that a valid warrant was outstanding cannot render an arrest made without a valid warrant or probable cause constitutionally compliant. Justice LaVecchia states that, to hold otherwise, would be akin to adopting the good faith exception to the exclusionary rule that has been explicitly and consistently rejected by the Court in State v. Novembrino, 105 N.J. 95 (1987) and subsequent cases. In Novembrino, the Court reasoned that the exclusionary rule functioned not only as a deterrent for police misconduct, but also as "the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searched." Id. at 157. Justice LaVecchia states that in this matter, which involves an unconstitutional seizure from a man who had secured relief eighteen months earlier from his outstanding arrest warrant, defendant's right to be free from unreasonable seizure trumps the subjective, good faith reliance by the police on the invalid warrant. Justice LaVecchia therefore would affirm the decision of the Appellate Division upholding application of the exclusionary rule, without any exception based on the officer's good faith.

**JUSTICE SOLOMON, DISSENTING, joined by JUSTICE PATTERSON and JUSTICE FERNANDEZ-VINA,** would decline to apply the exclusionary rule to the evidence seized after defendant's arrest. Justice Solomon states that the exclusionary rule should not be applied where, as here, law enforcement personnel share no responsibility for the error giving rise to the unlawful search or seizure, and the officer's reliance on the warrant is found to be objectively reasonable. Justice Solomon concludes that application of the exclusionary rule under these circumstances divorces the rule from its primary purpose -- to deter future police misconduct -- and ignores the significant costs of suppressing competent evidence. Justice Solomon would therefore reverse the judgment of the Appellate Division.

The members of the Court being equally divided, the judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER, JUSTICE LaVECCHIA, and JUSTICE ALBIN concur in the judgment of the Court, and join the separate, concurring opinion filed by JUSTICE LaVECCHIA. JUSTICE SOLOMON filed a separate, dissenting opinion, in which JUSTICES PATTERSON and FERNANDEZ-VINA join. JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

THOMAS SHANNON,

    Defendant-Respondent.


        Argued April 27, 2015 – Decided August 19, 2015

        On appeal from the Superior Court, Appellate Division.

        Ian D. Brater, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney; Mr. Brater and Mary R. Juliano, Special Deputy Attorney General/Acting Assistant Prosecutor, on the briefs).

        Matthew J. Astore, Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

        Frank Muroski, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (John J. Hoffman, Acting Attorney General, attorney).

        Lawrence S. Lustberg argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Gibbons, attorneys; Mr. Lustberg and Joseph A. Pace, on the brief).

    PER CURIAM.

The judgment of the Appellate Division is affirmed by an equally divided Court.

JUSTICE LaVECCHIA, concurring.

The Court granted the State leave to appeal an interlocutory order of the Appellate Division. The Appellate Division's order affirmed the grant of defendant's motion to suppress evidence seized after his arrest on a warrant that, unbeknownst to the arresting officers, had been judicially vacated eighteen months earlier but had not been removed from the relevant computer database showing active warrants.

I and the concurring members of the Court conclude that defendant's arrest -- made in the absence of either a valid warrant or probable cause -- was unlawful. In accordance with our decision in State v. Novembrino, 105 N.J. 95 (1987), the evidence seized as a result of that unlawful arrest is subject to exclusion without application of an exception based on the subjective good faith of the executing officers. Thus, we affirm the Appellate Division judgment.

I.

A.

This matter comes before us based on the record developed in defendant's motion to suppress. On March 26, 2009, Municipal Court Judge Daniel J. DiBenedetto issued a warrant for the arrest of defendant for non-payment of fines owed to the City of

2

Asbury Park.  Defendant learned of that warrant while incarcerated in Bayside State Prison on an unrelated charge.  He sent a letter to the municipal court requesting that his fines in connection with two matters -- a criminal conviction and a motor vehicle violation -- be vacated due to hardship.  On April 16, 2010, Municipal Court Judge Mark T. Apostolou granted defendant's request.

The Asbury Park Municipal Court Administrator, Patricia Green, provided testimony that when a judge vacates a fine, the warrant associated with the non-payment of that fine is necessarily vacated.  Specifically, she explained that once the vacation of a fine is entered into the relevant database, the outstanding warrant in that database is also vacated.  The municipal court employees, not the police department, are responsible for entering that information.  According to Green, in carrying out their responsibility of processing paperwork for arrests and violations within Asbury Park, she and her colleagues utilize separate computer databases for traffic violations and criminal matters:  the Automated Traffic System (ATS) and the Automated Complaint System (ACS), respectively.  In respect of defendant, Green stated that a deputy municipal court administrator properly vacated the traffic fines in the ATS system but "failed to go into the [ACS] system and vacate the criminal" fines there.  Therefore, the ACS computer system

3

did not reflect that the criminal fines were vacated, and, correspondingly, the arrest warrant associated with those fines was not vacated.

B.

On October 18, 2011, Officer Love of the Asbury Park Police Department received a call directing him to 835 Dunlewy Street. The dispatcher informed the officer that a suspicious vehicle -- a white Mercury with tinted windows and containing two males -- had been idling at that address for some time. Officer Love reported that Dunlewy Street was a "high crime area," where drugs were both used and sold and where there had been recent burglaries. Officer Love proceeded to Dunlewy Street and, upon arrival, approached the vehicle meeting the reported description. Officer Love inquired of the driver, defendant, his purpose for sitting there. Defendant responded that he was waiting for a female friend that he had met recently and pointed out 831 Dunlewy Street as her residence. Officer Love asked defendant for identification; he provided a New Jersey driver's license.

Subsequent efforts to substantiate defendant's given reason for his presence on Dunlewy Street proved unfruitful but are not relevant to this appeal. What is important is that Officer Love asked dispatch to run a warrant check, and dispatch advised Officer Love that defendant had an outstanding arrest warrant.

4

Defendant was placed under arrest. Officer Love patted defendant down for weapons and felt what he thought was a large amount of money; defendant confirmed that he had money on him. Officer Love brought defendant to the police station in his patrol car. Officer Love testified that he had inspected the inside of his patrol car earlier that day and that no one else had been inside since. During the drive, the officer noticed that defendant was moving around in the back seat.

After removing defendant from the vehicle, Officer Love spotted suspected cocaine on the back seat and white residue on defendant's fingers. Another officer secured defendant while Officer Love pulled up the bench seat in the back of the car, revealing additional suspected controlled dangerous substances. Those substances were seized as evidence and their admissibility is the subject of this appeal. Defendant was later found to be in possession of $2,317 in cash. None of the officers were aware that the warrant on which defendant was initially arrested had been vacated.

C.

For purposes of this appeal, we note defendant was indicted for third-degree possession of a controlled dangerous substance (cocaine), N.J.S.A. 2C:35-10(a)(1), and second-degree possession of a controlled dangerous substance (cocaine) with intent to distribute, N.J.S.A. 2C:35-5(b)(2).

5

On April 30, 2012, defendant filed a motion to suppress the evidence seized from the police vehicle. In support of that motion, defendant argued that Officer Love's questioning and warrant check were unconstitutional. Following a hearing at which only Officer Love testified, the motion court denied the motion to suppress, finding the officer's conduct constitutionally permissible.

In January 2013, after the jury had been selected and sworn in defendant's criminal trial, defendant asked the court to reopen his suppression motion, relying on a letter from the Asbury Park Municipal Court, dated April 21, 2010, which indicated that defendant's fines had been vacated. Defendant submitted that that letter showed that his initial arrest was unlawful. The court adjourned the trial's start to research the matter further. Thereafter, with defendant's consent and waiver of double jeopardy, the trial judge declared a mistrial and granted defendant's motion to reopen the suppression issue.

Following a hearing at which Green, the municipal court administrator, testified, the trial court granted the motion to suppress. Relying on State v. Moore, 260 N.J. Super. 12, 16 (App. Div. 1992), the trial court held that defendant was arrested unlawfully and therefore the seized drugs were inadmissible "fruits of such an unlawful arrest." The trial court determined that "the lack of culpability on the part of

6

the [police department]" was irrelevant, citing "the non-deterrent purposes of the exclusionary rule."

The Appellate Division granted leave for the State to appeal and, on April 11, 2014, affirmed the trial court's suppression of the evidence. The appellate panel pointed to Moore, supra, in which an earlier Appellate Division panel had relied on Novembrino, in finding inadmissible the fruits of an arrest based on a vacated warrant that improperly remained marked as "active" in police records, "even though the particular arresting officer acted in good faith and without culpability." 260 N.J. Super. at 14, 16-20. The panel also distinguished the arrests in State v. Diloreto, 180 N.J. 264 (2004), and State v. Pitcher, 379 N.J. Super. 308 (App. Div. 2005), certif. denied, 186 N.J. 242 (2006), by noting that the arrests were not constitutionally defective. Addressing the question left open in State v. Handy, 206 N.J. 39, 51-52 (2011), regarding the admissibility of evidence when "[t]he police department did not behave in an unreasonable manner in that it relied on an ostensibly valid arrest warrant," the panel held that, consistent with Novembrino, the evidence seized from defendant must be excluded.

This Court granted the State's motion for leave to appeal the interlocutory order of the Appellate Division. State v. Shannon, 218 N.J. 528 (2014). We also granted amicus curiae

7

status to the Attorney General of New Jersey and to the American Civil Liberties Union of New Jersey (ACLU).

## II.

## A.

The State submits that because the test for assessing the constitutionality of a search or seizure is "objective reasonableness," neither the exclusionary rule nor the good faith exception is implicated in this appeal. The State contends that defendant's arrest was based on Officer Love's objectively reasonable reliance on the vacated warrant; thus, no constitutional violation occurred, and the Appellate Division decision should be reversed.

The State argues that New Jersey case law has permitted officer reliance on erroneous database information to substantiate a stop or arrest and that, in practical effect, this case is indistinguishable from State v. Green, 318 N.J. Super. 346 (App. Div. 1999). The State also cites to Herring v. United States, 555 U.S. 135, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009), and Arizona v. Evans, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995), as demonstrative of situations in which the United States Supreme Court has declined to suppress evidence seized following arrests made on misinformation contained in official databases.

Even if defendant's constitutional rights were violated, the State argues that the exclusionary rule should not be applied. The State maintains that the exclusionary rule's primary purpose is deterrence and that neither police officers nor court clerks would be deterred by suppression of the evidence in this matter. Likewise, the State argues that the exclusionary rule's aim of preserving judicial integrity would not be offended when the officers believed their conduct complied with the law. Relatedly, the State urges this Court to follow the path taken in other states that have rejected the good faith exception established in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), but have nonetheless permitted introduction of evidence seized following the reliance of law enforcement officials on erroneous information in a database.

B.

Defendant says his case involves a straightforward application of the Novembrino precedent. He was illegally arrested, and the evidence resulting from his arrest should be suppressed.

According to defendant, the outcome of this appeal should follow in line with the outcome in Moore, supra, in which the Appellate Division, relying on Novembrino, suppressed evidence seized following the defendant's arrest based on a vacated

9

warrant that remained active in police records due to an administrative error. 260 N.J. Super. at 16-17. Defendant distinguishes Pitcher, supra, 379 N.J. Super. at 320, and Diloreto, supra, 180 N.J. at 277-78. Defendant also emphasizes that the New Jersey Constitution provides greater protection for its citizens than the United States Constitution and, thus, any reliance on Herring and Evans is inapt.

Finally, defendant argues that deterring officer misconduct is not the only purpose behind the exclusionary rule. Instead, the rule is designed also to vindicate the individual's right to privacy and to maintain judicial integrity. Thus, defendant submits that the Appellate Division's decision should be affirmed.

C.

As amicus, the Attorney General supports the State's position, providing further bases for concluding that defendant's constitutional rights were not violated or, assuming a constitutional violation, that the exclusionary rule should not apply. However, the Attorney General adds that, to the extent that Evans cannot be reconciled with this Court's holding in Novembrino, Novembrino should be reconsidered and overruled. According to the Attorney General, the concerns that influenced the Novembrino Court to reject the Leon good faith exception

10

have not come to pass. Thus, review of that decision is warranted.

Amicus ACLU supports defendant's position, submitting that an arrest without a warrant is constitutionally impermissible and that the exclusionary rule must apply to evidence seized as a result of that constitutional violation. The ACLU characterizes the State's argument as an attempt to "carve out a good faith exception" in contravention of Novembrino. The ACLU points to the non-deterrent rationales for the exclusionary rule and contends that the State's position conflicts with those rationales. In addition, the ACLU maintains that the deterrence rationale for the exclusionary rule would be furthered by suppression in this matter, pointing to the infrequent occurrence of clerical errors in New Jersey as evidence of the efficacy of deterrence.

## III.

Both the United States Constitution and the New Jersey Constitution guarantee the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. In accordance with that guarantee, both constitutions require that arrest warrants be supported by probable cause and that warrantless arrests in public places be supported by the same. State v. Brown, 205 N.J. 133, 144 (2011) (citing State v. Basil, 202 N.J. 570, 584 (2010)). "[A] police officer has

11

probable cause to arrest a suspect when the officer possesses 'a well[-]grounded suspicion that a crime has been or is being committed.'" Basil, supra, 202 N.J. at 585 (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)). That well-grounded suspicion should be based on the totality of the circumstances as viewed by "an objectively reasonable police officer." Ibid. (citations and internal quotation marks omitted).

The consequence for a violation of those constitutional principles is generally the exclusionary rule, Handy, supra, 206 N.J. at 45, which prohibits evidence obtained as a result of such violative conduct from being "use[d] in the prosecution's case in chief," Leon, supra, 468 U.S. at 900, 104 S. Ct. at 3409, 82 L. Ed. 2d at 684. While the United States Supreme Court has acknowledged a good faith exception to that rule in certain circumstances, see, e.g., id. at 926, 104 S. Ct. at 3422, 82 L. Ed. 2d at 700-01, this Court has declined to do so, see, e.g., Novembrino, supra, 105 N.J. at 157-58. That is the relevant point of divergence between state and federal law in this matter.

A.

In Leon, supra, the United States Supreme Court declined to apply the exclusionary rule to evidence seized by officers relying in good faith on a search warrant issued by a magistrate judge even though that warrant was later determined "to be

12

unsupported by probable cause." 468 <u>U.S.</u> at 900, 926, 104 <u>S.</u> <u>Ct.</u> at 3409, 3422, 82 <u>L. Ed.</u> 2d at 684, 700-01. In so doing, the <u>Leon</u> Court noted that the exclusionary rule was "'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" <u>Id.</u> at 906, 104 <u>S. Ct.</u> at 3412, 82 <u>L. Ed.</u> 2d at 687-88 (quoting <u>United States v. Calandra</u>, 414 <u>U.S.</u> 338, 348, 94 <u>S. Ct.</u> 613, 620, 38 <u>L. Ed.</u> 2d 561, 571 (1974)). After reviewing the objectives of the exclusionary rule, the Court concluded that "it c[ould ]not be expected, and should not be applied, to deter objectively reasonable law enforcement activity." <u>Id.</u> at 906-09, 919, 104 <u>S. Ct.</u> at 3412-13, 3418, 82 <u>L. Ed.</u> 2d at 688-89, 696. Thus, weighing the costs and benefits of exclusion of the evidence at issue, the Court determined that suppression was inappropriate. <u>Id.</u> at 922, 104 <u>S. Ct.</u> at 3420, 82 <u>L. Ed.</u> 2d at 698. Thus sprang into being the "good faith exception" to the exclusionary rule.

Since <u>Leon</u>, the Supreme Court has expanded the good faith exception to include situations similar to that presently before this Court. In <u>Evans</u>, <u>supra</u>, the Supreme Court addressed "whether evidence seized in violation of the Fourth Amendment by an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant -- a record that

13

is later determined to be erroneous -- must be suppressed by virtue of the exclusionary rule." 514 U.S. at 3-4, 115 S. Ct. at 1187, 131 L. Ed. 2d at 39. In that case, the warrant for the defendant's arrest had been quashed seventeen days prior to his arrest; however, for an undetermined reason, the warrant remained in police computer records. Id. at 4-5, 115 S. Ct. at 1188, 131 L. Ed. 2d at 40-41. The State conceded that the defendant's arrest violated his Fourth Amendment rights. Id. at 6 n.1, 115 S. Ct. at 1189 n.1, 131 L. Ed. 2d at 41 n.1. Despite that constitutional violation, the Court found that the "[a]pplication of the Leon framework support[ed] a categorical exception to the exclusionary rule for clerical errors of court employees." Id. at 16, 115 S. Ct. at 1194, 131 L. Ed. 2d at 47.

In Herring, supra, the Supreme Court answered the "unresolved" question in Evans: "whether the evidence should be suppressed if police personnel [rather than judicial clerks] were responsible for the error." 555 U.S. at 142-43, 129 S. Ct. at 701, 172 L. Ed. 2d at 505-06 (internal quotation marks omitted). The defendant in Herring drove to the sheriff's department to retrieve items from his impounded truck and was recognized by one of the police investigators. See id. at 137, 129 S. Ct. at 698, 172 L. Ed. 2d at 502. Upon inquiry, the investigator was informed that an active arrest warrant existed for the defendant. Ibid. The officer arrested the defendant

14

and conducted a search incident to that arrest that revealed narcotics and a weapon.  Ibid.  It was later discovered that the warrant had been recalled five months earlier, but the recall had not been updated in the relevant database.  Id. at 138, 129 S. Ct. at 698, 172 L. Ed. 2d at 502.

Importantly, like in Evans, the Court accepted the parties' assumption that a Fourth Amendment violation occurred and restricted the analysis to whether the exclusionary rule should apply.  Id. at 139, 129 S. Ct. at 699, 172 L. Ed. 2d at 503.  The Court again relied on the Leon framework and maintained that "the benefits of deterrence must outweigh the costs" of applying the exclusionary rule.  Id. at 141, 129 S. Ct. at 700, 172 L. Ed. 2d at 505.  The Court concluded that "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'"  Id. at 147-48, 129 S. Ct. at 704, 172 L. Ed. 2d at 509 (quoting Leon, supra, 468 U.S. at 907 n.6, 104 S. Ct. at 3412 n.6, 82 L. Ed. 2d at 688 n.6).

B.

In Novembrino, supra, this Court relied on Article I, Paragraph 7, of the New Jersey Constitution in rejecting the Leon Court's good faith exception.  105 N.J. at 157-59.  Thus, the Court interpreted the New Jersey Constitution to provide

15

broader protection than the Fourth Amendment.  See id. at 145, 157-59.  In its decision, the Court expressed concern that "the good-faith exception w[ould] ultimately reduce respect for and compliance with the probable-cause standard."  Id. at 154.  The Court also characterized the exclusionary rule as "an integral element of our state-constitutional guarantee," noting that "[i]ts function is not merely to deter police misconduct[] [but] . . . also [to] serve[] as the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches."  Id. at 157.  This Court has not retreated from its rejection of a good faith exception.  State v. Adkins, 221 N.J. 300, 314 (2015) ("Post-Novembrino, our Court's adherence to its holding has remained steadfast . . . .").

In Moore, supra, the Appellate Division considered whether suppression was appropriate for evidence seized following an arrest based on a warrant that "had been judicially marked 'vacated' 27 days" earlier but remained outstanding in the local police log book.  260 N.J. Super. at 14.  The panel noted that while the parties disputed who was at fault for the failure to update the record, there was "no dispute that the arresting officer acted in good faith in executing what he thought was a valid warrant."  Id. at 15.  However, "[t]he inescapable consequence, after the finger-pointing [wa]s over, [wa]s that

16

defendant was arrested illegally." Id. at 16. Therefore, the Appellate Division concluded that "the fruits of such an unlawful arrest [we]re not available to the State for [the defendant's] prosecution even though the particular arresting officer acted in good faith and without culpability." Ibid. The panel rejected the State's argument that "th[e] mistaken arrest situation [i]s different from the issuance of a bad search warrant in Novembrino," finding "no justifiable distinction between a judicial error on the existence of probable cause" and the administrative errors committed in that case. Id. at 17. In fact, the panel denoted the State's argument "no more than a plea for a 'good faith' exception to the exclusionary rule" that the Court had rejected in Novembrino. Id. at 16.

By contrast, in Diloreto, supra, this Court found no constitutional violation, and thus did not apply the exclusionary rule, in circumstances in which officers relied, in part, on misinformation from the National Crime Information Center (NCIC) database in questioning, detaining, and conducting a pat-down search of the defendant. 180 N.J. at 271-74, 282. More specifically, the Court concluded that, given an NCIC alert that the defendant was an "endangered" missing person along with other factors, the community caretaker doctrine justified the police conduct. Id. at 277-78. In discussing the role of the

17

officer's reliance on the erroneous NCIC alert in its decision, the Court acknowledged that it had rejected the good faith exception in Novembrino; however, because "the error in failing to remove defendant's name from the NCIC database occurred not within the framework of an intended prosecution, but under the protective rubric of the community caretaker doctrine," Novembrino was inapplicable. Id. at 280.

In Pitcher, supra, the Appellate Division similarly dealt with a database error; this time, misinformation in the motor vehicle database reflected that the defendant's license was suspended. 379 N.J. Super. at 312. The defendant was stopped based on that misinformation, and the officer observed that the defendant was intoxicated. Id. at 312-13. In moving to suppress the evidence of intoxication, the defendant argued that the stop was unconstitutional because it was based on an erroneous license suspension. Id. at 313. The panel analogized the license suspension information to information received from an unreliable informant, noting that "[a] license suspension, unlike a warrant or report of reasonable suspicion, is not a determination about the justification for a stop or arrest. The license suspension is simply factual information that leads to a suspicion of a violation of the motor vehicle laws, i.e., one articulable fact." Id. at 318. Thus, the panel found that the

stop was constitutional and that the good faith exception rejected in Novembrino was irrelevant.  Id. at 313.

Most recently, in Handy, supra, this Court addressed a scenario in which officers arrested the defendant based on receipt of erroneous information from the dispatcher that the defendant had an outstanding warrant.  206 N.J. at 42-43.  Incident to that arrest, the defendant was found to be in possession of drugs.  Id. at 42.  The police dispatcher then informed the officer that there was a birth-date discrepancy between that provided by the defendant and that listed in the warrant.  Ibid.  Upon return to headquarters, the officer learned that the warrant on which he had arrested the defendant was for a different individual, with a similar, but somewhat differently spelled, name.  Id. at 42-43.  The defendant nevertheless was charged with possession of the drugs.  Id. at 43.  In assessing whether that evidence should be suppressed, this Court found that the "conduct by the dispatcher, an integral link in the law enforcement chain, was objectively unreasonable" and thus violative of the state and federal constitutions.  Id. at 42.

In rendering its decision, the Court discussed the Supreme Court decisions in Evans and Herring, and found them inapplicable.  Id. at 48-50, 52-53.  The Handy Court further highlighted that neither case "dispensed with the standard of

19

'objective reasonableness' that governs the execution of a warrant," id. at 53, on which the Court's decision was premised.

IV.

The arguments before the Court call into question the significance of law enforcement reliance on an ostensibly valid arrest warrant in assessing the constitutionality of an arrest as well as the application of the exclusionary rule.

Beginning with the constitutionality of defendant's arrest, there is no dispute in this case that, at the moment of defendant's arrest, no valid warrant was in effect. Defendant's arrest was based solely on the existence of the allegedly outstanding arrest warrant that, in fact, had been vacated eighteen months earlier but had not been removed from the computer database accessed by the dispatcher. No other probable cause provides a leg on which the State can stand to assert a lawful arrest. "The inescapable consequence . . . is that defendant was arrested illegally." Moore, supra, 260 N.J. Super. at 16.[1] The officer's belief, even in good faith, that a valid warrant for defendant's arrest was outstanding cannot render an arrest made absent a valid warrant or probable cause constitutionally compliant. See Brown, supra, 205 N.J. at 144.

---

[1] Notably, in Evans and Herring, a constitutional violation was conceded or assumed. Herring, supra, 555 U.S. at 139, 129 S. Ct. at 699, 172 L. Ed. 2d at 503; Evans, supra, 514 U.S. at 6 n.1, 115 S. Ct. at 1189 n.1, 131 L. Ed. 2d at 41 n.1.

20

To the extent that the State relies for its position on Diloreto and Pitcher, those decisions are inapposite, as the Appellate Division properly concluded.

In Diloreto, supra, the Court considered the officers' reliance on the misinformation contained in the NCIC database as one factor supporting their conduct under the community caretaker doctrine. 180 N.J. at 282. Thus, the Court applied an exception to the general prohibition against warrantless searches. Id. at 275, 282. That decision cannot, and should not, be read to support the proposition that objective and reasonable reliance on information in the NCIC database, even if later determined to be erroneous, can support probable cause for an arrest. In fact, the Court specifically highlighted the limited nature of its holding. Id. at 282 ("The State should not construe our holding as approving wide application of the community caretaker doctrine in this setting.").

In Pitcher, supra, the Appellate Division found that information in a motor vehicle database, even if later found to be erroneous, could be "one articulable fact" that can "lead[] to a suspicion of a violation of the motor vehicle laws" to substantiate a motor vehicle stop. 379 N.J. Super. at 318. The panel did not opine that reasonable reliance on that information

could support probable cause to arrest.[2]  See ibid.  The same rationale applies to the Appellate Division decision in Green, supra, in which officers were in possession of a valid warrant for a person matching the defendant's description and were executing that warrant at the address listed for that person when the defendant fled and was arrested.  318 N.J. Super. at 349.  In allowing admission of the evidence seized following defendant's arrest, the panel relied on law enforcement's objective and reasonable execution of the valid warrant, id. at 353-54; the panel did not suggest that an invalid warrant, unsupported by probable cause, could supply the basis for an objective and reasonable belief that there is probable cause to arrest.  See ibid.

Our decision does not alter the standard of objective reasonableness applicable to the assessment of probable cause to arrest.  See Basil, supra, 202 N.J. at 585; cf. Handy, supra, 206 N.J. at 42 (finding conduct of police dispatcher, "an integral link in the law enforcement chain, was objectively unreasonable and violat[ive of]" the New Jersey and United

---

[2] The State submitted a supplemental letter brief to the Court bringing to its attention the United States Supreme Court's decision in Heien v. North Carolina, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).  We note that Heien, too, dealt with law enforcement's objective reasonableness in effectuating a stop; it did not find justification for an arrest absent probable cause or a valid warrant.  See id. at ___, 135 S. Ct. at 539, 190 L. Ed. 2d at 485.

22

States Constitutions). We conclude only that an invalid warrant cannot provide the basis for an objective and reasonable belief that probable cause to arrest exists; an arrest made under that standard is constitutionally defective. To hold otherwise would be akin to adopting the good faith exception to the exclusionary rule that has been explicitly, and consistently, rejected by this Court, most recently in Adkins, supra, 221 N.J. at 314. See also Moore, supra, 260 N.J. Super. at 16 (labeling State's argument "no more than a plea for a 'good faith' exception to the exclusionary rule"). We decline to carve out an exception to that explicit rejection in the manner requested by the State or the Attorney General.

In respect of the exclusionary rule, defendants are afforded greater rights under the New Jersey Constitution than under the United States Constitution. See Novembrino, supra, 105 N.J. at 144-45. In Novembrino, this Court relied on the New Jersey Constitution in rejecting the Leon good faith exception. Id. at 159. The United States Supreme Court decisions in Evans and Herring are premised on the Court's decision in Leon. Thus, to follow their reasoning, as the State and the Attorney General advocate, would be a retrenchment of our decision in Novembrino. We can see it no other way.

The Court in Novembrino based its decision on the conclusion that the exclusionary rule functioned not only as a

deterrent for police misconduct but also as "the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches." Id. at 157. This case involves an unconstitutional seizure of a man who had secured relief eighteen months earlier from his outstanding arrest warrant. His constitutional right to be free of that unreasonable seizure trumps the subjective good faith reliance by the police on the unpurged, but in fact vacated, arrest warrant. Novembrino's important purpose to secure vindication of constitutional rights cannot be ignored. We decline to do so here. Moreover, the inevitable result will cause people to be more careful -- a laudatory effect on all state actors.

V.

For the foregoing reasons, we affirm the judgment of the Appellate Division affirming the trial court's suppression order.

CHIEF JUSTICE RABNER, JUSTICE LaVECCHIA, and JUSTICE ALBIN concur in the judgment of the Court, and join the separate, concurring opinion filed by JUSTICE LaVECCHIA. JUSTICE SOLOMON filed a separate, dissenting opinion, in which JUSTICES PATTERSON and FERNANDEZ-VINA join. JUDGE CUFF (temporarily assigned) did not participate.

24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

THOMAS SHANNON,

    Defendant-Respondent.


    JUSTICE SOLOMON, dissenting.

    The Court held in State v. Novembrino, 105 N.J. 95 (1987), only that, in recognition of the exclusionary rule's secondary function as a mechanism for the enforcement of citizens' constitutional rights, where law enforcement is involved in the error giving rise to the unlawful search or seizure, the police officer's good faith conduct is not a basis to avoid suppression. Reading Novembrino to require suppression for a purely judicial error, as the concurring opinion does, ignores the significant costs of suppressing competent evidence and renders the deterrent function of the exclusionary rule insignificant. In my view, the concurring opinion's conclusion cannot be reconciled with our subsequent decisions. See, e.g., State v. Shaw, 213 N.J. 398, 414 (2012) (holding that, in light of "the high price exacted by suppressing evidence," suppression is unwarranted where law enforcement obtains "evidence that is

1

sufficiently independent of the illegal conduct"); State v. Williams, 192 N.J. 1, 14-15 (2007) (same); State v. Badessa, 185 N.J. 303, 310-11 (2005).

By holding that the officer's objectively reasonable conduct is irrelevant in a case in which no law enforcement personnel are remotely responsible for the impropriety of the arrest, the concurring opinion not only fails to give effect to "[t]he 'prime purpose' of the [exclusionary] rule," State v. Smith, 212 N.J. 365, 388 (2012) (quoting State v. Evers, 175 N.J. 355, 376 (2003)), cert. denied, __ U.S. __, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013), it also misreads our jurisprudence since Novembrino rejected the federal good-faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). As recently as four years ago, this Court considered whether law enforcement personnel's conduct was objectively reasonable in a situation where a police officer, through carelessness on the part of the police dispatcher, arrested defendant pursuant to a validly issued warrant against another individual. State v. Handy, 206 N.J. 39, 41-42 (2011). The Appellate Division applied a similar analysis in State v. Green, 318 N.J. Super. 346 (App. Div. 1999), where the officer arrested the defendant based on the mistaken belief that the defendant was the man referenced on the arrest warrant. Id. at 348-49.

The concurring opinion finds these cases inapposite because the warrants upon which those arrests were based were valid. However, while the arrest warrants in those cases were supported by probable cause, the arrests were not. The fact remains that, as here, the defendants in those cases were arrested unlawfully; there is no principled basis to distinguish between the unlawful arrests in Handy and Green, where the defendants were mistakenly arrested pursuant to valid arrest warrants issued against other individuals, and defendant's unlawful arrest pursuant to a once-validly issued arrest warrant that was, unbeknownst to law enforcement, subsequently vacated.

Moreover, because municipal court staff were entirely responsible for the error in this case, application of the exclusionary rule here improperly conflates law enforcement with the judiciary. The judiciary and law enforcement are separate and independent components of our criminal justice system, serving entirely different functions. Law enforcement, for its part, investigates criminal activity and secures incriminating evidence for use in obtaining convictions. The judiciary, in turn, weighs the evidence presented, applies the relevant law to that evidence, and determines if there is sufficient probable cause to support a warrant. The judiciary also functions as a check against executive power exercised by law enforcement. "Judges and magistrates are not adjuncts to the law enforcement

3

team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions." Leon, supra, 468 U.S. at 917, 104 S. Ct. at 3417, 82 L. Ed. 2d at 695. Thus, absent some indicia of law enforcement involvement, suppressing evidence based on a purely judicial oversight improperly suggests that the judiciary is in collusion with law enforcement to obtain convictions, and therefore may be deterred from obtaining such evidence through unlawful means.

## I.

There is no dispute regarding the facts relevant to our analysis. Patrolman Steven Love arrested defendant in October 2011 pursuant to an arrest warrant, which was later determined to have been vacated in 2010. However, due to a clerical oversight by a municipal court administrator, the arrest warrant was not listed as vacated in the automated criminal system (ACS) -- a statewide database that tracks, among other things, warrant history -- for each criminal complaint. It is undisputed that this process in no way involves law enforcement personnel.

Following defendant's arrest, Officer Love discovered illegal narcotics and $2,317 in cash on defendant -- evidence which formed the basis of the charges against him. On rehearing, the motion court granted defendant's suppression motion based on testimony from the Asbury Park Municipal Court administrator, indicating that defendant's warrant had been

4

vacated prior to his arrest and that defendant's arrest was therefore unlawful. Relying on Novembrino, the Appellate Division affirmed, holding that regardless of who was responsible for the clerical error, "New Jersey jurisprudence does not permit the State to use the fruits of an illegal arrest against a defendant even if the police acted reasonably."

## II.

As the concurring opinion notes, it is undisputed that the arrest warrant upon which defendant's arrest was based was invalid, notwithstanding Officer Love's reasonable understanding to the contrary. Therefore, the disagreement here does not turn on whether Officer Love had probable cause to arrest defendant or whether an exception to the warrant requirement applied, but on whether the appropriate remedy for the error leading to defendant's arrest is suppression.

The appropriate remedy for a police violation of a citizen's right to be free from unreasonable searches and seizures has long been the topic of debate. See Novembrino, supra, 105 N.J. at 100 ("'The debate within the Court on the exclusionary rule has always been a warm one.'" (quoting United States v. Janis, 428 U.S. 433, 446, 96 S. Ct. 3021, 3028, 49 L. Ed. 2d 1046, 1056 (1976)); see also Leon, supra, 468 U.S. at 907, 104 S. Ct. at 3412, 82 L. Ed. 2d at 688 ("The substantial social costs exacted by the exclusionary rule for the

5

vindication of Fourth Amendment rights have long been a source of concern.").  In light of the dispute before this Court, a brief history of the exclusionary rule is instructive here.

A.

The development and history of the exclusionary rule illustrates its core purpose:  deterrence of future unlawful police conduct.  The United States Supreme Court first applied the exclusionary rule in a criminal case in Weeks v. United States, 232 U.S. 383, 398, 34 S. Ct. 341, 346, 58 L. Ed. 652, 657-58 (1914).  In doing so, the Court observed:

> The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.
>
> [Id. at 392, 34 S. Ct. at 344, 58 L. Ed. at 655.]

Thirty-five years later, the Court in Wolf v. Colorado, 338 U.S. 25, 33, 69 S. Ct. 1359, 1364, 93 L. Ed. 1782, 1788 (1949), declined the invitation to apply the exclusionary rule to the States via the Due Process Clause of the Fourteenth Amendment. The Court, noting other remedies available to citizens for disruption caused by unlawful police intrusion, explained that

6

it could not "brush aside the experience of States which deem the incidence of such conduct by the police too slight to call for a deterrent remedy not by way of disciplinary measures but by overriding the relevant rules of evidence." Id. at 31-32, 69 S. Ct. at 1363-64, 93 L. Ed. at 1787-88.

In the seminal case of Mapp v. Ohio, 367 U.S. 643, 660, 81 S. Ct. 1684, 1694, 6 L. Ed. 2d 1081, 1093 (1961), the Court reversed course, holding the exclusionary rule applicable to the States via the Due Process Clause of the Fourteenth Amendment. In doing so, the Court noted that it had consistently held the exclusionary rule is "a clear, specific, and constitutionally required -- even if judicially implied -- deterrent safeguard without insistence upon which the Fourth Amendment would have been reduced to 'a form of words.'" Id. at 648, 81 S. Ct. at 1688, 6 L. Ed. 2d at 1086 (quoting Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S. Ct. 182, 183, 64 L. Ed. 319, 321 (1920)).

The Mapp Court further noted its recent "recogni[tion] that the purpose of the exclusionary rule 'is to deter -- to compel respect for the constitutional guaranty in the only effectively available way -- by removing the incentive to disregard it.'" Id. at 656, 81 S. Ct. at 1692, 6 L. Ed. 2d. at 1090 (quoting Elkins v. United States, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444, 4 L. Ed. 2d 1669, 1677 (1960) (further stating "[t]he

7

[exclusionary] rule is calculated to prevent, not to repair," constitutional violations)). In disapproving of "the double standard" resulting from finding the exclusionary rule applicable to federal agents but not to state law enforcement, the Court explained:

> In nonexclusionary States, federal officers, being human, were by it invited to and did, as our cases indicate, step across the street to the State's attorney with their unconstitutionally seized evidence. Prosecution on the basis of that evidence was then had in a state court in utter disregard of the enforceable Fourth Amendment. If the fruits of an unconstitutional search had been inadmissible in both state and federal courts, this inducement to evasion would have been sooner eliminated.
>
> [Id. at 658, 81 S. Ct. at 1693, 6 L. Ed. 2d at 1091-92.]

Over the next twenty-three years, the United States Supreme Court decided a series of cases paring back the exclusionary rule where, in the Court's view, the deterrent effect did not outweigh the truth-finding function of the criminal justice system. See, e.g., Alderman v. United States, 394 U.S. 165, 171-72, 89 S. Ct. 961, 965, 22 L. Ed. 2d 176, 185-86 (1969) (holding only those whose Fourth Amendment rights have been violated have standing to invoke exclusionary rule); United States v. Calandra, 414 U.S. 338, 349-52, 94 S. Ct. 613, 620-22, 38 L. Ed. 2d 561, 572-73 (1974) (rejecting application of exclusionary rule to evidence presented at grand jury

8

proceedings because such application "would achieve a speculative and undoubtedly minimal advance in the deterrence of police misconduct at the expense of substantially impeding the role of the grand jury"); United States v. Havens, 446 U.S. 620, 626, 100 S. Ct. 1912, 1916, 64 L. Ed. 2d 559, 565 (1980) (holding exclusionary rule does not bar use of unlawfully seized evidence for impeachment purposes).  Then, in what this Court described as "the most significant limitation of the exclusionary rule since its genesis in Weeks," Novembrino, supra, 105 N.J. at 139, the Supreme Court in Leon, supra, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677, adopted the good-faith exception to the exclusionary rule.

The Supreme Court in Leon, supra, applying "the balancing approach that has evolved during the years of experience with the rule," determined that "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate should be admissible in the prosecution's case in chief."  468 U.S. at 913, 104 S. Ct. at 3415, 82 L. Ed. 2d at 692.  In denying the suppression motion, the District Court in that case found the affidavit in support of the search warrant on which the search of the defendant's home was based "insufficient to establish probable cause," but determined that there was no question the officer who procured the warrant "had

acted in good faith."  Id. at 903-04 & n.4, 104 S. Ct. at 3410 & n.4, 82 L. Ed. 2d at 685-86 & n.4.

Turning to the question of the appropriate remedy, the Court considered "the tension between the sometimes competing goals of, on the one hand, deterring official misconduct and removing inducements to unreasonable invasions of privacy and, on the other, establishing procedures under which criminal defendants are 'acquitted or convicted on the basis of all the evidence which exposes the truth.'"  Id. at 900-01, 104 S. Ct. at 3409, 82 L. Ed. 2d at 684 (quoting Alderman, supra, 394 U.S. at 175, 89 S. Ct. at 967, 22 L. Ed. 2d at 187).  The Court determined that, on balance, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  Id. at 922, 104 S. Ct. at 3420, 82 L. Ed. 2d at 698.  Thus, while suppression remains the appropriate remedy where "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause," id. at 926, 104 S. Ct. at 3422, 82 L. Ed. 2d at 701, suppression is not warranted where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted

10

within its scope," id. at 920, 104 S. Ct. at 3419, 82 L. Ed. 2d at 697.

The Supreme Court then provided four distinct rationales for finding a good-faith exception to the exclusionary rule. "First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916, 104 S. Ct. at 3417, 82 L. Ed. 2d at 694. Additionally, "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion." Ibid. Third, the Court could "discern no basis . . . for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." Ibid. Finally, the Court reasoned that exclusion of evidence "'[w]here the official action was pursued in complete good faith . . . loses much of its force.'" Id. at 919, 104 S. Ct. at 3418, 82 L. Ed. 2d at 696 (citations omitted). Thus,

> where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty."

11

> [Id. at 919-20, 104 S. Ct. at 3419, 82 L. Ed.
> 2d at 697 (citation omitted).]

Against this backdrop, we consider the application of the exclusionary rule in New Jersey.

## B.

With some exception, in the fifty-four years since this Court first addressed the exclusionary rule in State v. Valentin, 36 N.J. 41 (1961), our courts have resisted the federal trend towards erosion of the exclusionary rule. Most relevant to the matter before us, a majority of the Court in Novembrino, supra, 105 N.J. at 157-58, rejected the federal good faith exception established in Leon.

In Novembrino, a detective discovered evidence of drug trafficking following a search of the defendant's workplace. Id. at 102-03. The detective conducted the search pursuant to a warrant issued by a judge, who had signed the warrant based on an affidavit prepared by the detective stating that the defendant was selling narcotics out of his gas station. Id. at 102-04. The trial court suppressed the evidence, finding the affidavit "failed to establish probable cause." Id. at 103. In affirming suppression, the Appellate Division rejected the State's contention that the good faith exception should be applied in this state, reasoning that the good faith exception "would undermine the constitutional requirement of probable

12

cause." Id. at 105. This Court granted the State's petition for certification, determined that the detective's affidavit failed to establish probable cause, and turned to the question of whether the good faith exception should apply in this State. Id. at 124-30.

In rejecting the good faith exception to the exclusionary rule, the Novembrino majority began by noting that the Court "has frequently resorted to our own State Constitution in order to afford our citizens broader protection of certain personal rights than that afforded by analogous or identical provisions of the federal Constitution." Id. at 145. Finding academic criticism of Leon persuasive, the majority stated:

> By eliminating any cost for noncompliance with the constitutional requirement of probable cause, the good-faith exception assures us that the constitutional standard will be diluted.
>
> . . . .
>
> Our view that the good-faith exception will ultimately reduce respect for and compliance with the probable-cause standard that we have steadfastly enforced persuades us that there is a strong state interest that would be disserved by adopting the Leon rule.
>
> [Id. at 152-54.]

The majority agreed with the dissenting Justice's observation "that the public will view the good-faith exception to the exclusionary rule as a sensible accommodation between protecting an individual's constitutional rights and punishing

13

the guilty." Id. at 156. Nevertheless, the majority determined that it could not countenance the "erosion of the probable-cause guarantee" enshrined in article I, paragraph 7 of our State Constitution, which it felt was likely to "be a corollary to the good-faith exception." Id. at 159.

Recently, in the context of a police officer's execution of an arrest warrant, this Court in Handy, supra, again considered the standard for suppression of evidence uncovered in the execution of a warrant. The Court affirmed the Appellate Division's conclusion that, where the execution of a warrant is at issue, "the basic test under both" the federal and our state constitutions is: "was the conduct objectively reasonable in light of 'the facts known to the law enforcement officer at the time of the search.'" 206 N.J. at 46-47 (quoting State v. Bruzzese, 94 N.J. 210, 221 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695-96 (1984)); accord Green, supra, 318 N.J. Super. at 354. In doing so, we noted that, "under federal and state jurisprudence," objective reasonableness is the appropriate standard because "'room must be allowed for some mistakes by the police,'" provided of course "the police have behaved reasonably." Handy, supra, 206 N.J. at 54 (quoting Illinois v. Rodriguez, 497 U.S. 177, 186, 110 S. Ct. 2793, 2800, 111 L. Ed. 2d 148, 159-60 (1980)). Thus, we

14

observed, the "standard of objective reasonableness is the polestar for our inquiry."  Id. at 47.

Applying that standard, we affirmed the Appellate Division's finding that a police dispatcher, who had erroneously informed the arresting officer that the defendant had an outstanding arrest warrant, acted unreasonably.  Id. at 41-42. The officer had arrested Handy in response to the police dispatcher's report that Handy had an outstanding arrest warrant, and, in a search incident to that arrest, found illegal drugs.  Id. at 42.  The officer later learned that the warrant matched neither Handy's name nor his birthdate, but nevertheless charged Handy with drug offenses.  Id. at 42-43.  We held that "our own constitution requires suppression" because the police dispatcher, "an integral link in the law enforcement chain," had acted unreasonably "in failing to take further steps when she recognized that she did not have a match on the warrant check." Id. at 42, 54.

Notably, the error in the execution of the arrest warrant was not due to inadequate or inaccurate information provided by the police officer.  Hence, we looked to whether the police dispatcher's conduct was objectively reasonable under the circumstances rather than whether the officer relied upon the warrant in good faith.  The Appellate Division in Handy found its decision "fully consistent with [its] decision in State v.

15

Moore, 260 N.J. Super. 12, 16 (App. Div. 1992)," a case in which the police, in good faith, arrested a defendant pursuant to an arrest warrant that was no longer valid, but which "the police never deleted . . . from their computer databases." State v. Handy, 412 N.J. Super. 492, 503 (App. Div. 2010). Observing that police inaction led to the mistake giving rise to the unlawful arrest, the Appellate Division "relied on Professor LaFave's assertion that 'the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected.'" Ibid. (internal quotation marks omitted) (quoting Moore, supra, 260 N.J. Super. at 18).

Similarly, in Green, supra, 318 N.J. Super. at 354, the Appellate Division held that Novembrino does not govern cases "deal[ing] with the validity of a police officer's actions in executing a warrant." The officers in that case mistook Green for another individual, Lovett, who was the person identified in a search warrant they were executing. Id. at 349. During the course of the arrest, the officers discovered drugs belonging to Green. Ibid. The Appellate Division determined that, because Green closely resembled Lovett, Green was standing outside of Lovett's home when the officers arrived, and Green ran into Lovett's house when the officers announced themselves, the officers' belief that Green was Lovett was objectively reasonable. Id. at 352. Observing the United States Supreme

16

Court's assertion that law enforcement agents need not always be correct but must "'always be reasonable,'" the appellate panel concluded that, "if a police officer's actions in executing a warrant are reasonable, there is no constitutional violation and thus no need to consider the availability of a good faith exception to the exclusionary rule." Id. at 354 (quoting Rodriguez, supra, 497 U.S. at 185, 110 S. Ct. at 2800, 111 L. Ed. 2d at 159).

III.

Considered together, the above decisions demonstrate that, where law enforcement personnel share no responsibility for the error giving rise to the unlawful search or seizure, the question is not whether the police officer acted in good faith, but whether the officer's conduct was objectively reasonable under the circumstances. The Court's decision today, in finding suppression is required where the police bear no responsibility for the error resulting in the defendant's unlawful arrest, extends Novembrino beyond its intended scope.

While Novembrino accords greater weight to the vindication function of the exclusionary rule than does the federal system, nothing in Novembrino suggests that the exclusionary rule is no longer intended to operate prophylactically against future unlawful misconduct by law enforcement. The Novembrino majority did not reject Leon's well-settled assertion that "the

17

exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, supra, 468 U.S. at 916, 104 S. Ct. at 3417, 82 L. Ed. 2d at 694. Rather, Novembrino, supra, stated that the exclusionary rule's function "is not merely to deter police conduct," 105 N.J. at 157, indicating that deterrence of future police misconduct remains a significant purpose of the exclusionary rule.

Indeed, since Novembrino, we have consistently affirmed our view that "[t]he 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.'" E.g. Smith, supra, 212 N.J. at 388 (quoting Evers, supra, 175 N.J. at 376); see also Shaw, supra, 213 N.J. at 413 (noting one of two purposes of exclusionary rule "is to deter future unlawful police conduct" (citations and internal quotation marks omitted)); Williams, supra, 192 N.J. at 14 ("The overarching purpose of the rule is to deter the police from engaging in constitutional violations[.]"); Badessa, supra, 185 N.J. at 310 (same).

Nor have we rejected Leon's premise that the exclusionary rule is "'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" Handy, supra, 206 N.J. at 45; see also Williams, supra, 192 N.J. at 14; Shaw, supra, 213 N.J. at 413. As we have recently observed, "[a]lthough the exclusionary rule 'may

18

vindicate the Fourth Amendment rights of a particular defendant, and more generally the privacy rights of all persons,' it may also 'depriv[e] the jury or judge of reliable evidence that may point the way to the truth.'"  Shaw, supra, 213 N.J. at 414 (second alteration in original) (quoting Williams, supra, 192 N.J. at 14-15).

> Because of the high price exacted by suppressing evidence, "the exclusionary rule is applied to those circumstances where its remedial objectives can best be achieved." Thus, when law enforcement officials secure evidence that is sufficiently independent of the illegal conduct -- evidence that is not tainted by the misdeed -- then withholding evidence from the trier of fact is a cost that may not be justified by the exclusionary rule.
>
> [Ibid. (citations omitted).]

Accordingly, the exclusionary rule applies where its purposes may best be served, mindful of the costs suppression of evidence imposes on the criminal justice system; it is not applied as a matter of constitutional right.  In light of our steadfast adherence to the United States Supreme Court's balancing approach in applying the exclusionary rule, in which deterrence of future police misconduct plays a heavy role, Novembrino must be read only to preclude good-faith reliance by police officers on a warrant where law enforcement personnel contribute to a mistake that renders the warrant invalid. Reading Novembrino as the concurrence does here relegates the

19

exclusionary rule's deterrent function to a mere ancillary benefit. Novembrino does not go so far, and such a conclusion is contrary to our jurisprudence following Novembrino.

IV.

There is no basis to find that the exclusionary rule, applied to these facts, has any deterrent value whatsoever. Patricia Green, the Asbury Park Municipal Court administrator, offered unrebutted testimony that, in her twenty-seven-year tenure as administrator, as far as she was aware, this type of oversight had never occurred before. Green affirmed that "[i]t was our error," and that "there's no way the police would have known that" the warrant had been vacated. Therefore, suppression in this case divorces the exclusionary rule from its primary function: deterrence of future unlawful police conduct. Cf. Moore, supra, 260 N.J. Super. at 13-15 (upholding suppression of evidence discovered following arrest based on vacated bench warrant, where police involvement in failure to vacate warrant was disputed). No reported decision goes so far, and it is error to do so here.

As the concurring opinion observes, Officer Love arrested defendant pursuant to a vacated warrant, "'[t]he inescapable consequence'" of which "'is that defendant was arrested illegally.'" Ante at __ (slip op. at 20) (quoting Moore, supra, 260 N.J. Super. at 16). However, contrary to the concurrence's

20

position, there is no meaningful distinction between defendant's arrest pursuant to a once validly issued warrant, and the arrests of the defendants in Handy and Green, who were arrested pursuant to validly issued warrants for other individuals. At the end of the day, there was no probable cause supporting the arrests of any of these defendants. More importantly, "unlike Novembrino, th[ese] case[s] do[] not involve any issue relating to the integrity of the warrant-issuing process." Green, supra, 318 N.J. Super. at 353. Because there is no evidence that any law enforcement personnel were responsible for failing to vacate defendant's warrant, the standard is whether Officer Love's actions were objectionably reasonable "in light of 'the facts known to [him] at the time.'" Id. at 354 (quoting Bruzzese, supra, 94 N.J. at 221).

"Suppressing evidence sends the strongest possible message that constitutional misconduct will not be tolerated and therefore is intended to encourage fidelity to the law." Williams, supra, 192 N.J. at 14. Where, as here, law enforcement had no involvement in the fault giving rise to the unlawful arrest and "the officer's actions in executing a warrant are reasonable, there is no constitutional violation and thus no need to consider the availability of a good faith exception to the exclusionary rule." Green, supra, 318 N.J. Super. at 354. Because Officer Love's conduct was objectively

21

reasonable, there was no constitutional misconduct here, and thus no need to send the costly message suppression offers.

I agree with my colleagues in the concurring opinion that, under Novembrino, a police officer's objectively reasonable conduct is irrelevant where law enforcement personnel are responsible for the mistake giving rise to an unlawful arrest. However, neither Novembrino nor any decision since suggest that deterrence is no longer a relevant consideration when deciding whether suppression is the appropriate remedy. Nevertheless, the concurring opinion concludes that Novembrino requires application of the exclusionary rule -- notwithstanding that the record is devoid of evidence of police misconduct, and that the exclusionary rule has no deterrent value in this case. It is from this conclusion that I dissent.

For the foregoing reasons, I would reverse the judgment of the Appellate Division.

22

SUPREME COURT OF NEW JERSEY

NO.    A-111                      SEPTEMBER TERM 2013

ON APPEAL FROM          Appellate Division, Superior Court


STATE OF NEW JERSEY,

      Plaintiff-Appellant,

         v.

THOMAS SHANNON,

      Defendant-Respondent.


DECIDED          August 19, 2015
        Chief Justice Rabner                      PRESIDING

OPINION BY          Per Curiam

CONCURRING OPINION BY      Justice LaVecchia

DISSENTING OPINION BY      Justice Solomon

| CHECKLIST | AFFIRM | CONCUR | DISSENT |
|---|---|---|---|
| CHIEF JUSTICE RABNER | X | (X) | |
| JUSTICE LaVECCHIA | X | (X) | |
| JUSTICE ALBIN | X | (X) | |
| JUSTICE PATTERSON | | | X |
| JUSTICE FERNANDEZ-VINA | | | X |
| JUSTICE SOLOMON | | | X |
| JUDGE CUFF (t/a) | --------------- | --------------- | --------------- |
| TOTALS | 3 | | 3 |