878 A.2d 8 (2005)
379 N.J. Super. 308
STATE of New Jersey, Plaintiff-Respondent,
v.
Brian PITCHER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 2005.
Decided July 22, 2005.
*10 Christopher C. Cona, Turnersville, argued the cause for appellant.
Jacqueline E. Caban, Assistant Prosecutor, argued the cause for respondent (Sean F. Dalton, Gloucester County Prosecutor, attorney; Ms. Caban, on the brief).
Before Judges PARRILLO, GRALL and CHAMBERS.
The opinion of the court was delivered by
GRALL, J.A.D.
This appeal requires us to decide whether an officer who stops a car relying on Division of Motor Vehicle (DMV) records reporting that its owner's license is suspended must be deemed to have acted "unreasonably" and without adequate cause for intrusion upon rights protected by the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution if the license suspension information is later found to be inaccurate. Defendant argues that the evidence acquired as a result of the motor vehicle stop based on erroneous license suspension data must be suppressed because New Jersey does not recognize a "good faith" exception to the exclusionary rule. Because this officer's reliance on the DMV data base was objectively reasonable and his actions were consistent with constitutional restrictions on search and seizure, we conclude that the "good faith" exception has no relevance to the case, and therefore affirm.
Defendant Brian H. Pitcher plead guilty to driving while under the influence of alcohol, contrary to N.J.S.A. 39:4-50, and he was sentenced to attend twelve hours of education at the Intoxicated Driver Resource Center (IDRC) and required to pay a fine of $250, a surcharge of $200, a $50 VCCB assessment, a $75 SNSF assessment, a $30 LEOTEF penalty and $30 for court costs. Defendant was also charged with driving while under a license suspension, contrary to N.J.S.A. 39:3-40. The State conceded that a verdict of not guilty should be entered on that charge. At the time of his plea, defendant expressly noted his intention to appeal the denial of his motion to suppress evidence of his intoxication.[1]See R. 3:5-7(d).
The record we review is slim. Both courts below decided the matter on stipulated facts, and there were few facts stipulated. On February 19, 2003, an order was entered suspending defendant's driver's license for non-payment of child support. On February 28, 2003, a probation officer assigned to child support matters prepared and submitted to the DMV a *11 certification indicating that the suspension order was erroneously entered and that defendant was not liable for payment of a restoration fee. Defendant was not notified about either the suspension or the subsequent attempt to rescind it. On September 19, 2003, the DMV data base, which is available to law enforcement officers through mobile data terminals (MDTs), continued to reflect that defendant's license was suspended.
On September 19, 2003, Officer Covolesky of the Mantua Township Police Department saw defendant's car in a WaWa parking lot. For reasons not reflected on the record, Covolesky attempted to check the license plate number from his MDT. Unable to complete the check, Covolesky radioed a request for a check of the license plate number. A second officer responded and accurately reported that the data available on his MDT showed that the license of the registered owner was suspended. When defendant drove from the parking lot, Covolesky followed, stopped the car, approached and made observations, not set forth on the record, that led him to conclude that defendant was intoxicated. He took defendant into custody. His blood alcohol content subsequently was measured at .18. Covolesky charged defendant with driving while his license was suspended, contrary to N.J.S.A. 39:3-40, and driving while under the influence, contrary to N.J.S.A. 39:4-50.
Defendant does not challenge the officer's decision to check his license plates or contend that the officer's observations after stopping the vehicle were inadequate to provide probable cause for his arrest for driving while under the influence. He does not contend that the DMV data base of license suspensions is generally unreliable. His only claim is that the initial stop was unconstitutional because it was based on what later proved to be an erroneous record of his license suspension. From that premise, he argues that the evidence obtained as a result of the motor vehicle stop must be suppressed because New Jersey does not recognize a "good faith" exception to the exclusionary rule. See State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987).
The "good faith" exception has no relevance to this case. That exception limits the remedy for police conduct that exceeds the restrictions on search and seizure imposed by the Fourth Amendment. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This motor vehicle stop was within the boundaries of the Fourth Amendment.
When a police officer stops a car there is a seizure within the meaning of the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); State v. Dickey, 152 N.J. 468, 475, 706 A.2d 180 (1998). The brief and minimally intrusive seizure involved in an automobile stop is not violative of the constitutional restrictions against "unreasonable" searches when the officer has probable cause to believe that a traffic violation has occurred or is continuing. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95-96 (1996); State v. Hickman, 335 N.J.Super. 623, 634, 763 A.2d 330 (App.Div.2000). "The substance" of the probable cause standard is whether there is "a reasonable ground for belief of guilt." Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 800, 157 L.Ed.2d 769, 775 (2003); State v. Pineiro, 181 N.J. 13, 21, 853 A.2d 887 (2004). Probable cause is present "where the facts and circumstances within [an] officer's knowledge," based on "reasonably trustworthy *12 information," are sufficient to support a reasonable belief "that an offense has been or is being committed." Ibid.
In addition, a brief traffic stop is constitutionally permissible under a less stringent standard. A "police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999).
Although stopping a car and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment, the governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, may outweigh the Fourth Amendment interest of the driver and passengers in remaining secure from the intrusion.
[United States v. Hensley, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604, 610 (1985).]
The validity of an investigatory stop based on reasonable suspicion rather than probable cause is determined by balancing the need for the stop against the invasion it entails. Hensley, supra, 469 U.S. at 228, 105 S.Ct. at 680, 83 L.Ed.2d at 611-12.
The New Jersey Supreme Court has determined that license plate checks followed by motor vehicle stops based on reasonable suspicion that the driver's license is suspended are constitutionally permissible in light of the interests at stake. The Court has held that officers may check license plates of cars they see in parking lots of commercial establishments against official records available to law enforcement on the MDT. See State v. Diloreto, 180 N.J. 264, 277, 850 A.2d 1226 (2004). Such record checks are permissible even when conducted randomly without any prior reasonable suspicion of a violation of the motor vehicle laws. See State v. Segars, 172 N.J. 481, 491-92, 799 A.2d 541 (2002). The Court has also held that when the records reveal that the owner's license to drive is suspended, that information is sufficient to give rise to a reasonable suspicion that the vehicle is being driven in violation of the motor vehicle laws and to warrant a stop of the vehicle. State v. Donis, 157 N.J. 44, 54-57, 723 A.2d 35 (1998); see Prouse, supra, 440 U.S. at 653-55, 99 S.Ct. at 1395-97, 59 L.Ed.2d at 667-69. The reality of dangers on our highways imposes a duty on law enforcement officers to take appropriate steps within constitutional and statutory boundaries to maintain the safety of New Jersey's roads. State v. Greeley, 178 N.J. 38, 49, 834 A.2d 1016 (2003).[2]
Because a motor vehicle stop based upon a reasonable suspicion that the driver's license is suspended is permissible, the only question we must address is whether the officer's suspicion was reasonable. Specifically, we must consider whether the facts available to the officer "at the moment of the seizure," were sufficient to cause a person of reasonable caution to believe that defendant was driving without a license. Pineiro, supra, 181 N.J. at 21, 853 A.2d 887. To establish reasonable suspicion, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the suspicion. Ibid.
In evaluating the sufficiency of the basis for a stop or arrest, courts consider the totality of the information available *13 to the officer at the time of the conduct. Ibid. ("facts and circumstances within the officer's knowledge"; facts available "at the moment of the seizure"). Information acquired subsequently cannot be used to either bolster or defeat the facts known at the time. See Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (after acquired facts did not defeat probable cause); Wong Sun v. United States, 371 U.S. 471, 479-80, 83 S.Ct. 407, 413, 9 L.Ed.2d 441, 450-51 (1963) (after acquired facts could not bolster probable cause). "It is axiomatic that hindsight may not be employed. . . ." 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 3.2(d) at 47 (4th ed.2004); see, e.g., State v. Green, 318 N.J.Super. 346, 352, 723 A.2d 1012 (App.Div.1999) (the officer's reasonable but mistaken belief that defendant was the person named in a warrant did not invalidate his action); State v. L.F., 316 N.J.Super. 174, 181, 719 A.2d 1272 (App.Div.1998) (facts known at the time cannot be converted "into something more nefarious by a hindsight focus on the results of a [subsequent] search").
Defendant's claim that denial of his suppression motion would require a "good faith" exception to the exclusionary rule is a request to employ hindsight in evaluating this motor vehicle stop. His argument is premised on what we consider to be an over reading of the United States Supreme Court's decisions in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) and Hensley, supra.
In Whiteley, officers made an arrest based on the strength of a bulletin advising that a warrant authorizing the suspect's arrest had been issued. 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. The Court held that despite the reasonableness of the officers' response to and reliance upon the bulletin, the arrest violated the Fourth Amendment because the warrant was issued on the basis of evidence insufficient to support a finding of probable cause. Ibid.
In Hensley, an officer stopped and questioned Hensley because he was named in a "flyer" circulated by another police department as wanted for questioning in connection with a breaking and entering. 469 U.S. at 224, 105 S.Ct. at 678, 83 L.Ed.2d at 609. The Court held that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." Id. at 232, 105 S.Ct. at 682, 83 L.Ed.2d at 614 (citation omitted). The Court continued, "If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." Ibid.
In both Whiteley and Hensley, the officers who took action were not the officers who evaluated the circumstances justifying the seizure. In both cases, that evaluation was made by others at a different time. For that reason, the validity of the arrest and stop were dependent upon the validity of the prior assessments of probable cause and reasonable suspicion.
A similar issue arises when police or court records erroneously reflect an outstanding warrant upon which an officer relies to make an arrest. That was the issue in Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). The officer made no determination about probable cause for the arrest but acted upon the strength of a report retrieved from the data terminal in his patrol car that indicated an outstanding warrant for Evans' arrest. See id. at 4-6, 115 S.Ct. at 1188, 131 *14 L.Ed.2d at 39-41. By the time of the arrest, the warrant had been rescinded, and the State of Arizona conceded that the arrest violated the Fourth Amendment. Id. at 6 n. 1, 115 S.Ct. at 1189 n. 1, 131 L.Ed.2d at 41 n. 1 (declining to consider the "reasonableness" of the arrest because of the State's concession). In short, the justification for the Fourth Amendment seizure, the warrant, was non-existent at the time of the arrest. The United States Supreme Court reversed the decision of the Arizona Supreme Court suppressing the evidence and held that it was admissible under the "good faith" exception to the exclusionary rule. Id. at 14, 115 S.Ct. at 1193, 131 L.Ed.2d at 46; cf. State v. Moore, 260 N.J.Super. 12, 16-17, 614 A.2d 1360 (App.Div.1992) (suppressing evidence secured during a search incident to an arrest justified only on the basis of a bench warrant that had been revoked and describing the State's argument to the contrary as a "plea for a `good faith' exception to the exclusionary rule" that had been rejected by the Supreme Court in Novembrino, supra).
A seizure based on mistaken inclusion of, or failure to timely delete, a record of license suspension in data accessible to law enforcement officers through MDTs does not pose the same issue as the police conduct at issue in Evans, Hensley and Whiteley. A license suspension, unlike a warrant or report of reasonable suspicion, is not a determination about the justification for a stop or arrest. The license suspension is simply factual information that leads to a suspicion of a violation of the motor vehicle laws, i.e., one articulable fact. In this case, the officer's suspicion of unlicensed driving was based on two specific and articulable facts: the DMV record of the suspension of the car owner's license that was erroneously included in the data base; and, the officer's observation of a car registered to that driver being driven.
The erroneous report about defendant's license suspension retrieved from a data base is analogous to misinformation supplied by an otherwise reliable informant. See Evans, supra, 514 U.S. at 17, 115 S.Ct. at 1194, 131 L.Ed.2d at 48 (O'Connor, J., concurring) (noting the similarity between relying on an informant and relying on data included in the computer system listing arrest warrants). As noted above, the fact that information an officer considers is ultimately determined to be inaccurate, even if it establishes that no crime was committed, does not invalidate a seizure. See, e.g., United States v. Covelli, 738 F.2d 847, 853-54 (7th Cir.) (arrest for passing counterfeit bill upheld although currency was later determined to be genuine), cert. denied, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984); see LaFave, supra, § 3.2(d) at 47-50, 49 n.99. "The standard of `reasonable suspicion' does not require that an officer exclude all possible innocent explanations of the facts and circumstances." Commonwealth v. Deramo, 436 Mass. 40, 762 N.E.2d 815, 818-19 (2002) (based on personal knowledge of the driver's license suspension and its duration, it was reasonable for an officer to suspect that some form of license suspension was still in effect; citing cases from other jurisdictions reaching the same conclusion).
Generally, where an officer relies on information provided by others the question is the reasonableness of the officer's reliance on that information under the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329-30, 76 L.Ed.2d 527, 545 (1983) (where an informant is known for "unusual" reliability, his failure to specify the basis of his knowledge is not critical to a finding of probable cause); State v. Golotta, 178 N.J. 205, 219, 837 A.2d 359 (2003) (discussing the reliability of a "9-1-1" call *15 reporting erratic driving and considering the reasonableness of a stop based on the call); Brown v. State, 986 S.W.2d 50, 52-53 (Tex.App.1999) (National Crime Information Center data on stolen vehicles need not be accurate on every occasion to permit reasonable reliance).
Defendant does not argue that the motor vehicle data base is an unreliable one or claim that troubling errors similar to the one in this case are commonplace or a matter of indifference to those responsible for providing, recording and maintaining the data. See Evans, supra, 514 U.S. at 17, 115 S.Ct. at 1194, 131 L.Ed.2d at 48 (O'Connor, J., concurring); id. at 25-26, 115 S.Ct. at 1198-1200, 131 L.Ed.2d at 53-54 (Ginsburg, J., dissenting). DMV records of drivers' license suspensions are deemed sufficiently reliable to be admissible as prima facie evidence of the fact. See State v. Zalta, 217 N.J.Super. 209, 214, 525 A.2d 328 (App.Div.1987); N.J.R.E. 803(c)(8); see also Donis, supra, 157 N.J. at 56-57, 723 A.2d 35. There is no assertion here that unreasonable conduct related to the investigation of criminal activity contributed to this error. Nothing suggests, for example, that: the officer ignored information about the reinstatement of the license; other officers held back information about the reinstatement; or other officers delayed in providing information to the record keepers. See LaFave, supra, § 3.5(d) at 291-97; State v. Cross, 164 N.J.Super. 368, 371, 396 A.2d 604 (App.Div.1978) (a case upholding arrest based on a stolen car report police forgot to cancel).
The errors that resulted in the retention of this mistaken record of suspension in the DMV data base, like the stale missing person report discussed in Diloreto, did not take place "within the framework of . . . prosecution." 180 N.J. at 280, 850 A.2d 1226. Thus, the inquiry is properly focused on whether the officer acted reasonably under the totality of the circumstances known to him at the time of the motor vehicle stop in relying on an articulable fact, the license suspension. We agree with the trial judges who considered the circumstances and concluded that this officer's conduct was reasonable.
Generally, other jurisdictions that have confronted the question of motor vehicle stops and arrests based on inaccurate records of license suspensions have reached the same conclusion. See, e.g., Commonwealth v. Wilkerson, 436 Mass. 137, 763 N.E.2d 508, 510 (2002) (where motor vehicle records were not under police control, probable cause was not negated when information about a driver's license later proved inaccurate); State v. Lanoue, 156 Vt. 35, 587 A.2d 405 (1991) (failure of agency responsible to update records did not undermine reasonableness of the stop); State v. Ewoldt, 448 N.W.2d 676, 678 (Iowa App.1989) (knowledge of inaccuracy of motor vehicle data not imputed to officer who stopped a car based on that data); contra Shadler v. State, 761 So.2d 279 (Fla.) (because the DMV is "an integral part of law enforcement in the State of Florida," the court concluded that the error was unreasonable and excluded the evidence), cert. denied, 531 U.S. 924, 121 S.Ct. 298, 148 L.Ed.2d 240 (2000). The weight of authority supports our conclusion that this officer reasonably relied on the information included in the DMV data base and acted on the basis of articulable facts giving rise to a reasonable suspicion that defendant was unlicensed.
In Point II of defendant's brief, he argues that his conviction should be reversed because he was denied due process at the time of his license suspension. The issue was not raised below, and the relevant facts are not included in this record. We decline to consider the argument. Nieder *16 v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
Affirmed.
NOTES
[1] Defendant's motion to suppress was denied first by a judge of the municipal court and then by a judge of the Law Division; in both courts defendant plead guilty expressly reserving his right to appeal the ruling on his suppression motion.
[2] Laws that provide for suspension or revocation of driving privileges for reasons not directly related to safety on the roads, see, e.g., N.J.S.A. 2A:17-56.41 (non-payment of child support, adopted 1996); N.J.S.A. 2C:35-16 (conviction of specified drug offenses, adopted 1987), has not changed the analysis.