**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2705-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ELDER LEMUS-ROQUE,

    Defendant-Appellant.

_____

> Argued March 4, 2020 – Decided April 22, 2020
>
> Before Judges Gooden Brown and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 18-026.
>
> Jeffrey S. Katz argued the cause for appellant.
>
> Tiffany M. Russo, Assistant Prosecutor, argued the cause for respondent (Fredric M. Knapp, Morris County Prosecutor, attorney; Tiffany M. Russo, of counsel and on the brief).

PER CURIAM

Following the denial of his suppression motion, defendant entered a conditional guilty plea to driving while intoxicated, N.J.S.A. 39:4-50, in the Mount Olive municipal court, preserving his right to appeal the denial in the Law Division. R. 7:6-2(c); R. 7:5-2(c)(2). Defendant now appeals from the January 17, 2019 Law Division order affirming the municipal court judge's denial of his suppression motion on de novo review. We affirm.

We glean the following facts from the municipal court suppression hearing, during which Sergeant Paul Ottavinia was the sole witness for the State, and Herbert Leckie, qualified as an expert in the administration of the horizontal gaze nystagmus (HGN) test,[1] testified for the defense. Ottavinia, a ten-year veteran of the Mount Olive Police Department, testified that on July 19, 2015, at approximately 3:29 a.m., he observed a vehicle make an illegal left turn despite clear markings and pull into the parking lot of a CVS. Ottavinia

---

[1] An HGN test is a field test performed to discern sobriety. See State v. Doriguzzi, 334 N.J. Super. 530, 534-35 (App. Div. 2000). "[N]ystagmus is defined as the involuntary jerking of the eye," and "it is generally understood that alcohol use, among other things, will cause nystagmus." Id. at 534. During an HGN test, an officer will hold his or her "finger about twelve to fifteen inches in front of a [test subject]'s eyes and move[] his [or her] finger side-to-side[,]" and the test subject must "follow the finger with his [or her] eyes without moving his [or her] head." Ibid. Each eye is individually evaluated for "lack of smooth pursuit," or "jerking," to assess whether the test subject may be "under the influence of alcohol." Id. at 534-35.

A-2705-18T4

promptly activated his overhead lights, engaging the motor vehicle recorder (MVR) in his patrol vehicle,[2] and conducted a motor vehicle stop.

When Ottavinia approached the vehicle, he "detected the odor of an alcoholic beverage" emanating from inside the vehicle. However, Ottavinia could not tell whether the odor "was coming from [the driver]," who was later identified as defendant, "or . . . one of [the] passengers" in the car. Ottavinia asked defendant if he had been drinking and defendant responded "that he had not." Additionally, when a back-seat passenger was directed by a back-up officer to exit the vehicle, an odor of alcohol was detected on the passenger. Nonetheless, Ottavinia was still concerned that defendant may have been under the influence. As a result, Ottavinia performed an abbreviated HGN test on defendant while he was seated in his car and "immediately . . . noticed a lack of smooth pursuit" on the part of defendant.

Based on his training and experience, Ottavinia concluded from the HGN test result that there was "[a]t least some alcohol consumption." As a result, to further his investigation, Ottavinia ordered defendant to exit the vehicle. Once defendant exited the vehicle, Ottavinia performed the standard field sobriety

---

[2]  The MVR video depicting the encounter was admitted into evidence and played during the hearing.

A-2705-18T4

tests, including the complete HGN, from which Ottavinia concluded there was probable cause to arrest defendant on suspicion of DWI. After defendant exited his vehicle to perform the tests, Ottavinia was also able to confirm that the odor of alcohol was coming from defendant's "[b]reath." Additionally, contrary to his earlier denial, defendant admitted to Ottavinia that he had "been drinking." After being placed under arrest for DWI, defendant was transported back to police headquarters.

The defense expert testified that based on his review of the MVR and Ottavinia's testimony, the partial HGN performed while defendant was still seated in his vehicle was not "a proper administration of the [HGN] test." According to the expert, Ottavinia failed to conduct a medical assessment of defendant prior to administering the test and failed to complete each phase of the test in its entirety. As a result, the expert opined that, although Ottavinia "administered [the HGN test] appropriately" once defendant was removed from his vehicle, the partial test administered inside the vehicle was not a reliable indicator of "impairment."

Based on the testimony, defendant argued there was no basis to order him out of the vehicle following the motor vehicle stop. The municipal court judge rejected the argument and denied defendant's suppression motion. Judge

4

Thomas J. Critchley, Jr., held a de novo hearing based on the record developed in the municipal court, during which defendant renewed his argument that the officer lacked reasonable articulable suspicion to order him to exit the vehicle. In a bench opinion issued on January 17, 2019, Judge Critchley rejected defendant's argument. The judge deferred to the municipal judge's finding that "the officer's testimony [was] credible and reliable" but made his "own judgment regarding the sufficiency of the evidence under the totality of the circumstances." Based on defendant's "driving conduct," the officer's detection of "the odor of alcohol . . . from the car generally," and the officer's administration of "a partial [HGN] test," which indicated "a lack of smooth pursuit," the judge concluded there was "a sufficient basis" to order defendant to exit the vehicle.

The judge explained:

> Almost all of the elements that would tend to be properly part of the totality of the circumstances to justify the police action are tempered by certain counter[vailing] considerations. Although there was a traffic violation, . . . the left-hand turn, it wasn't the type of motor vehicle action that necessarily goes along with driving while intoxicated. It could be someone who just hasn't been paying attention to how the road is laid out and where you're supposed to make turns or is unfamiliar with the area. It is also possible that intoxication can amplify that tendency to not . . . be cognizant of what the rules of the road are . . . .

5

Secondly, . . . there was an odor of alcohol, but the officer took pains to say it wasn't necessarily coming from the driver, . . . it was coming more from the car.

Finally, there was a . . . partial [HGN] test that was administered, that consisted essentially of just one part of it, in which the officer testified . . . that there was not smooth following of the movement of the finger.

My conclusion is that under all these circumstances, although I find it to be a close case, that the action of the officer was justified.

I can't completely discount any of the elements that were presented: the improper driving, the odor of alcohol, and even the partial administration of the [HGN] test. . . .

In addressing defendant's challenge to the officer's use of a partial HGN test in assessing the sufficiency of the evidence, the judge noted:

To the extent that the HGN test was performed not consistent with a variety of standards that were laid out on the record, I think that undercuts the weight to be given it, but not necessarily its place in the overall totality of the circumstances.

. . . .

Assuming arguendo that it is improper to give any weight to the [HGN] test, I . . . find . . . that . . . the remaining balance of the record would also be sufficient to justify the actions of the officer. But it is a closer case . . . because you are pulling out one

6

element of the equation that the officer testified he relied on[.  Y]ou would still have a situation where there was some improper driving and the presentation of an odor of alcohol in the vehicle[.] . . . [L]eaving aside any HGN at that point, it would probably be improper of the officer to not continue the investigation by removing the subject out of the car.  One of the things that can then happen is he can find out if the odor of alcohol is associated with just the car and not the driver, or the driver himself. . . .

I think that is a reasonable sequence of events.  It would have been in a sense improper for the officer . . . to have noticed some driving that was not perfect . . . and then pick up an odor of alcohol, but just send him on his way.  I don't think that is a sensible way to administer his duties, in terms of making sure there is a reasonable level of safety in the community.

So . . . the driving conduct and the odor of alcohol coming from the vehicle generally in combination could justify the very limited Fourth Amendment intrusion of removing the subject from the vehicle.

On appeal, defendant raises the following arguments for our consideration.

POINT ONE – DEFENDANT['S] . . . CONVICTION SHOULD BE REVERSED AS THE MOTION JUDGE'S DENIAL OF THE MOTION TO SUPPRESS WAS EMINENTLY INCORRECT AND CONSTITUTED REVERSIBLE ERROR.

A. THE POLICE OFFICER DID NOT HAVE SUFFICIENT BASIS TO ORDER THE DEFENDANT OUT OF THE VEHICLE.

7

B. THE POLICE OFFICER SHOULD NOT BE PERMITTED TO RELY ON AN INCOMPLETE SCIENTIFIC TEST, A TRUNCATED [HGN] TEST, IN DEVELOPING REASONABLE SUSPICION TO FURTHER A DRUNK DRIVING INVESTIGATION.

Following a de novo appeal to the Law Division, conducted on the record developed in the municipal court, our standard of review is limited. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005); see also R. 3:23-8(a)(2). We "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001). The Law Division judge must make independent findings of fact and conclusions of law based on the evidentiary record of the municipal court with deference to the municipal court judge's ability to assess the witnesses' credibility. State v. Johnson, 42 N.J. 146, 157 (1964). In turn, we focus our review on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (alteration in original) (quoting Johnson, 42 N.J. at 162). However, on legal determinations, our review is plenary. See State v. Kuropchak, 221 N.J. 368, 383 (2015).

When the only issue on appeal is the trial court's decision on a motion to suppress, our review is similarly circumscribed. State v. Robinson, 200 N.J. 1,

8

15 (2009). "An appellate court reviewing a motion to suppress evidence . . . must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We owe no deference, however, to conclusions of law made by trial court in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Our analysis begins with the foundational principle that a police stop of a motor vehicle is a seizure of the vehicle's occupants and therefore falls within the purview of the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution. Whren v. United States, 517 U.S. 806, 809-10 (1996); State v. Baum, 199 N.J. 407, 423 (2009). To justify a stop, "a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense . . . ." Scriven, 226 N.J. at 33-34. See also Delaware v. Prouse, 440 U.S. 648, 663 (1979). "To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion." State

v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)).

Following a stop, "the resultant request of a motorist to exit the vehicle is constitutionally permissible." State v. Bernokeits, 423 N.J. Super. 365, 370-71 (App. Div. 2011). "This is because once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop." Id. at 371. "Where the police have already lawfully decided that the driver shall be briefly detained, the additional intrusion of requesting him to step out of his vehicle has been described as 'de minimis.'" Ibid. (quoting Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977)). See also State v. Smith, 134 N.J. 599, 610 (1994).

> Even though the initial stop was for a motor vehicle violation, a police officer is not precluded from broadening the inquiry of his stop [i]f, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances give rise to suspicions unrelated to the traffic offense. Thus, in order to continue to detain a motorist once he is asked to exit the vehicle, a police officer must have a reasonable, articulable suspicion that the person is involved in criminal or unlawful activity beyond that which initially justified the stop.
>
> [Bernokeits, 423 N.J. Super. at 371-72 (alteration in original) (citations and quotation marks omitted).]

"In evaluating the sufficiency of the basis for a stop or arrest, courts consider the totality of the information available to the officer at the time of the conduct." Pitcher, 379 N.J. Super. at 315. "[C]ourts give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" Bernokeits, 423 N.J. Super. at 372 (quoting State v. Citarella, 154 N.J. 272, 279 (1998)). "It is well-settled that the touchstone of the Fourth Amendment is reasonableness," and "[i]n any given case, the reasonableness of the investigatory detention is a function of the degree and kind of intrusion upon the individual's privacy balanced against the need to promote governmental interests." Ibid. (first citing Terry v. Ohio, 392 U.S. 1, 37-38 (1968)), then citing State v. Davis, 104 N.J. 490, 504 (1986)).

Here, as a threshold matter, defendant does not dispute the legitimacy of the initial motor vehicle stop based on Ottavinia's observation of a motor vehicle violation, or the subsequent DWI arrest based on the evidence developed after defendant exited the vehicle. Defendant only challenges the basis for ordering him to exit the vehicle to undergo field sobriety tests. However, we agree with Judge Critchley that based on the totality of the circumstances, Ottavinia had a reasonable articulable suspicion that defendant was driving while intoxicated in

11

order to expand the scope of the initial traffic stop and order him to exit his vehicle to perform field sobriety tests.  Indeed, defendant was stopped at 3:29 a.m. after making an illegal left turn with the odor of an alcoholic beverage emanating from his vehicle and the administration of a partial HGN test indicating "[a]t least some alcohol consumption."

Relying on State v. Jones, 326 N.J. Super. 234 (App. Div. 1999), defendant argues "the mere odor of an alcoholic beverage even if coming from the operator's breath does not in and of itself provide sufficient reasonable suspicion to require a motorist to exit a vehicle for the performance of field sobriety tests."  Defendant's reliance on Jones is misplaced.  In Jones, we ruled that "the odor of alcohol [on a driver's breath], combined with [his] admission of consumption of one bottle of beer," was not "sufficient to establish probable cause to search the vehicle for open containers of alcohol" without a warrant. Id. at 237, 244-45.  Here, we are not concerned with a warrantless vehicle search. Moreover, there was more evidence in this case than "the mere odor of an alcoholic beverage."

Defendant also argues that the officer's reliance on an "adulterated version of an already questionably reliable [HGN] test" was improper because "the administration of a partial test . . . was not designed to permit . . . any opinion

about a subject's ingestion of alcohol."  However, while we have held that HGN testing is not admissible to "prove[] defendant's guilt of driving under the influence of alcohol," we noted "[t]his is qualitatively different from use of the HGN test only to establish probable cause to arrest or only in conjunction with breathalyzer results."  State v. Doriguzzi, 334 N.J. Super. 530, 546 (App. Div. 2000).  Here, the partial HGN test was used in conjunction with other evidence to establish a reasonable and articulable suspicion to extend the stop to conduct field sobriety tests.  As the judge noted, the fact that it was a partial HGN test "undercuts the weight to be given it, but not necessarily its place in the overall totality of the circumstances."

Further, we agree with Judge Critchley that even without the partial HGN test, the totality of the remaining circumstances justified the officer's limited intrusion.  As the judge noted, it would have been improper for the officer to "send [defendant] on his way" after observing the illegal left turn and detecting the odor of alcohol emanating from the vehicle.  "The reality of dangers on our highways imposes a duty on law enforcement officers to take appropriate steps within constitutional and statutory boundaries to maintain the safety of New Jersey's roads."  Pitcher, 379 N.J. Super. at 315.  Here, Ottavinia performed his duty in a constitutionally permissible fashion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2705-18T4