**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4581-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH M. TOMZA,

    Defendant-Appellant.

_____

Submitted September 29, 2021 – Decided November 12, 2021

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Morris County, Law Division, Municipal Appeal No. 19-034.

Levow DWI Law, PC, attorneys for appellant (Evan M. Levow, of counsel and on the brief; Christopher G. Hewitt, on the brief).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the denial of his motion to suppress evidence—the results of field sobriety tests—obtained during a motor vehicle stop for suspected driving while intoxicated and leaving the scene of an accident. Defendant contends the officer who made the stop did not personally observe a motor vehicle violation or erratic driving and did not have a lawful basis to initiate an investigative detention. Lincoln Park Municipal Court Judge Andrew M. Wubbenhorst presided over the suppression hearing and rendered a written opinion denying defendant's motion. On de novo review in Superior Court, Law Division Judge David Harold Ironson rendered a thorough eleven-page opinion, ruling that the stop was lawfully initiated based upon a reasonable and articulable suspicion of driving while intoxicated. After carefully reviewing the record in view of the governing legal principles, we affirm.

I.

We briefly summarize the procedural history and facts pertinent to the issues raised in this appeal. On November 3, 2018, defendant was arrested and charged with driving while intoxicated, N.J.S.A. 39:4-50; driving while intoxicated in a school zone, N.J.S.A. 39:4-50(g); reckless driving, N.J.S.A. 39:4-96; careless driving, N.J.S.A. 39:4-97; leaving the scene of an accident, N.J.S.A. 39:4-129; and failure to report an accident, N.J.S.A. 39:4-130.

2

Defendant moved to suppress evidence derived from the investigative detention that led to his arrest. On September 25, 2019, Judge Wubbenhorst convened a suppression hearing at which the State presented testimony from two witnesses: Lincoln Park Police Officer Alan Bull and the eyewitness who reported defendant's erratic driving to a 9-1-1 operator. On November 6, 2019, Judge Wubbenhorst rendered a written opinion, finding both witnesses credible and concluding that the investigative detention was lawfully initiated based upon reasonable and articulable suspicion that defendant had engaged in erratic driving resulting in an accident.

On December 4, 2019, defendant entered a conditional guilty plea to driving while intoxicated, N.J.S.A. 39:4-50, in exchange for the State's agreement to dismiss the remaining charges. Pursuant to Rule 7:6-2(c), defendant preserved the right to appeal the denial of his motion to suppress. On September 25, 2019, Judge Ironson conducted a de novo review hearing and on August 3, 2020, issued a written decision agreeing with the municipal court judge's credibility findings and concluding that the investigative detention was lawful.

The following facts were adduced by the State at the suppression hearing. On November 3, 2018, a private citizen observed a pickup truck driving

erratically. The pickup truck swerved off the road, knocked down a traffic sign, and continued as if nothing had happened. The eyewitness called 9-1-1 on his cell phone to report the incident. The eyewitness identified himself, described the suspect vehicle as a tan-colored Dodge pickup truck, and related that the truck was heading south on Comly Road heading toward the intersection with Route 202. The eyewitness did not report the license plate number or describe the driver of the suspect vehicle. The 9-1-1 operator asked the eyewitness to stay on the phone until an officer arrived. The eyewitness complied and followed the pickup truck continuously from the time he saw it strike the sign until he saw a marked police vehicle arrive at the intersection of Comly Road and Route 202.

Officer Bull was on patrol when he received instructions from the police dispatcher to locate the suspect pickup truck. The dispatcher relayed the information that had been provided by the eyewitness. Officer Bull made a U-turn and proceeded toward the intersection of Comly Road and Route 202. There he saw a light-colored pickup truck; it was the only pickup truck in sight. Although the truck was light grey or silver in color, the officer believed it could easily be mistaken for tan.

A-4581-19

As Officer Bull waited at the intersection, he observed the pickup truck make a right turn. The officer followed the truck but lost sight of it as it turned. The officer testified that the truck was out of view for "four or five seconds, at the most."

After turning onto the adjacent street, Officer Bull realized that the pickup truck had pulled into a driveway. The officer did not see the truck turn into the driveway but deduced that the truck in the driveway was the one he had begun to follow because there were no other vehicles on the roadway. He testified that the truck in the driveway was "the exact same [one]" as the vehicle he identified at the intersection.

Officer Bull drove "slightly past" the driveway before he realized that the vehicle now parked in the driveway was the pickup truck he had observed at the intersection. The officer backed up and maneuvered the patrol car behind the truck. Just before stopping, Officer Bull confirmed with the dispatcher that the pickup truck he was tasked to locate was reported as a Dodge.

As Officer Bull turned into the driveway, he noticed the passenger door of the pickup truck was open. Defendant began to step out of the truck, but the officer ordered him to get back into the vehicle. The officer did not see the damage that had been caused by the collision with the traffic sign before giving

5

commands to defendant.[1] The officer instructed defendant to produce his license and registration and explained that someone had reported that defendant's vehicle struck a traffic sign. Defendant denied that he hit anything. The officer asked defendant to step out of the truck and administered field sobriety tests. Defendant was thereafter placed under arrest for driving while intoxicated.

Defendant raises the following contentions for our consideration:

POINT I

OFFICER BULL LACKED PROBABLE CAUSE TO CONDUCT A MOTOR VEHICLE STOP

POINT II

EVEN IF THE STOP IS CATEGORIZED AS MERELY INVESTIGATIVE, OFFICER BULL STILL LACKED REASONABLE SUSPICION

II.

We begin our analysis by acknowledging the legal principles governing this appeal. The scope of our review of a suppression hearing is limited. See State v. Handy, 206 N.J. 39, 44–45 (2011). We "must uphold the factual findings underlying the trial court's decision, so long as those findings are 'supported by

---

[1]  The officer eventually observed right-side bumper damage that would be "similar to striking a sign." That observation, however, cannot be used to justify an investigative detention that had already occurred.

sufficient credible evidence in the record.'" State v. Evans, 235 N.J. 125, 133 (2018) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Elders, 192 N.J. at 244 (citation omitted). A trial judge's credibility determinations therefore should be upheld if they are supported by sufficient, credible evidence. State v. S.S., 229 N.J. 360, 374 (2017).

Deference is especially appropriate when, as in this case, two judges have examined the facts and reached the same conclusion. As the Supreme Court made clear in State v. Locurto, "[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." 157 N.J. 463, 474 (1999) (citing Midler v. Heinowitz, 10 N.J. 123, 128–29 (1952)). Accordingly, our review of the factual and credibility findings of the municipal court and Law Division judges "is exceedingly narrow." State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

A-4581-19

In contrast to the deference that we owe to a trial court's factual and credibility findings, we review a trial court's legal conclusions de novo. S.S., 229 N.J. at 380. Because issues of law "do not implicate the fact-finding expertise of the trial courts, appellate courts construe the Constitution, statutes, and common law de novo—with fresh eyes—owing no deference to the interpretive conclusions of trial courts, unless persuaded by their reasoning." Ibid. (quoting State v. Morrison, 227 N.J. 295, 308 (2016)) (internal quotation marks omitted); see also Manalapan Realty LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (noting that appellate courts are not bound by a trial court's interpretations of the legal consequences that flow from established facts). In the event of a mixed question of law and fact, we review a trial court's determinations of law de novo but will not disturb a court's factual findings unless they are "clearly erroneous." State v. Marshall, 148 N.J. 89, 185 (1997).

The legal standard for initiating an investigative detention is well-established.[2] A police officer is authorized to stop and detain a vehicle only if

---

[2] The State argues the encounter in defendant's driveway began as a consensual field inquiry—which does not require a particularized suspicion of wrongdoing—because the officer did not pull over defendant's vehicle, which had already parked just before the encounter. We disagree. The record clearly

he or she has a reasonable and articulable suspicion that the driver committed an offense. Locurto, 157 N.J. at 470 (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). To justify an investigative detention, the State must show the stop was "based on 'specific and articulable facts which, taken together with rational inferences from those facts,' [gave] rise to a reasonable suspicion of criminal activity." State v. Nishina, 175 N.J. 502, 510–11 (2003) (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

The reasonable suspicion standard requires only "some minimal level of objective justification for making the stop." Id. at 511 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). Importantly, "the State is not required to prove

---

shows that Officer Bull ordered defendant to get back inside the truck at the outset of the encounter. That command would lead a reasonable person to believe that he or she was not free to leave. Accordingly, the encounter at that moment rose to the level of an investigative detention and not a mere field inquiry. See State v. Maryland, 167 N.J. 471, 483–84 (2001) (explaining that an officer is not deemed to have seized a person for purposes of the Fourth Amendment if the officer's questions are put in a conversational manner and if the officer did not make demands or issue orders; conversely, a field inquiry becomes a stop if a person reasonably believes he or she cannot walk away without answering questions); cf. State v. Rosario, 229 N.J. 263, 276 (2017) (holding the defendant was subject to an investigative detention, and not just a field inquiry, when the officer used his patrol car to block in defendant's car that was lawfully parked in front of her house, directed the patrol car's alley light to shine into her car, and then approached her driver's-side window to address her).

that the suspected motor-vehicle violation occurred." Locurto, 157 N.J. at 470. Nor is the State required to establish probable cause to initiate a traffic stop.[3] As our Supreme Court made clear in State v. Shaw, "[t]he standard for this form of brief stop or detention is less than the probable cause showing necessary to justify an arrest." 213 N.J. 398, 410 (2012); see also State v. Pitcher, 379 N.J. Super. 308, 314 (App. Div. 2005) (explaining that the level of proof needed to sustain a motor vehicle stop is reasonable suspicion, not the higher standard of probable cause).

Defendant characterizes the incident as a "de facto motor vehicle stop based on no more than a naked hunch." The record belies that characterization. The State presented ample evidence at the suppression hearing to establish that Officer Bull had reasonable and articulable suspicion to initiate a stop to investigate whether defendant was intoxicated and had struck a road sign.

The gravamen of defendant's argument is that Officer Bull did not personally observe a motor vehicle infraction or erratic driving. Although most traffic stops are based on the detaining officer's personal observations, that is

---

[3] Defendant contends that, "[t]he police officer lacked probable cause to stop [] defendant." Defendant conflates the "reasonable suspicion" standard required for a motor vehicle stop with the probable cause standard required to effect an arrest.

not a constitutional requirement. Rather, an officer may rely on information provided by others if that information meets a threshold test of reliability. In State v. Golotta, for example, our Supreme Court upheld the validity of a motor vehicle stop where the officer acted upon information received from an anonymous 9-1-1 caller who reported that a particular vehicle was being driven erratically on a public road. 178 N.J. 205, 228–29 (2003). The Court sustained the stop notwithstanding that the officer did not personally observe any erratic driving by the driver because he initiated the stop as soon as he identified the vehicle that had been reported by the anonymous 9-1-1 caller. Id. at 210.

We note that in the present case, Officer Bull had little opportunity to observe whether defendant was driving erratically because defendant pulled into his driveway just as the officer began to follow him. Accordingly, the officer did not corroborate the eyewitness's account that the pickup truck had swerved. We therefore must carefully evaluate the reliability of the information that the eyewitness provided to the 9-1-1 operator that was relayed to and relied upon by Officer Bull. The critical issue before us is whether that information, standing alone and without any corroborating observation of erratic driving by the officer, was sufficient to establish a reasonable and articulable suspicion upon which to justify the temporary seizure of defendant's vehicle to conduct a

drunk driving investigation. This entails a multi-part examination. The State carried the burden at the suppression hearing to establish that: (1) the information provided by the eyewitness was reliable, (2) Officer Bull had identified the same vehicle the eyewitness was following, and (3) the vehicle that was parked in the driveway was the same vehicle that the officer spotted on Comly Road. We address each fact-sensitive sub-issue in turn, beginning with the reliability of the report of erratic driving made by the eyewitness.

In Golotta, the Court acknowledged that, "[a]n anonymous tip, standing alone, is rarely sufficient to establish a reasonable articulable suspicion of criminal activity." 178 N.J. at 213 (quoting Rodriquez, 172 N.J. at 127–28). The Court nonetheless recognized that an anonymous 9-1-1 call carries enhanced reliability, especially when considered in the context of the grave threat to public safety posed by intoxicated drivers. 178 N.J. at 218–22. More recently in Navarette v. California, 572 U.S. 393 (2014), the United States Supreme Court embraced that rationale and held that the police had reasonable suspicion to stop the defendant's vehicle for suspected drunk driving where an anonymous 9-1-1 call was made shortly after the tipster's observation of erratic driving.

But in the case before us, we need not invoke the enhanced reliability inherent in 9-1-1 calls because the caller was not anonymous as in Golotta and Navarette. Rather, he falls within the rubric of a citizen-informer, that is, a person whose identity is known and who is not him/herself engaged in criminal activity. Such persons can be held accountable if they provide false information to police. So too, when an informer divulges his or her identity, police and a reviewing court are able to determine whether the person had an incentive to lie or an ulterior purpose in volunteering incriminating information about the suspect. Accordingly, it is well-established that when, as in this case, the informant is a known ordinary citizen, the court and police may presume the tip's veracity and reliability. See State v. Stovall, 170 N.J. 346, 362 (2002) (citing State v. Davis, 104 N.J. 490, 506 (1986)); State v. Basil, 202 N.J. 570, 586 (2010) ("[A]n objectively reasonable police officer may assume that an ordinary citizen reporting a crime, which the citizen purports to have observed, is providing reliable information."); see also Wildoner v. Borough of Ramsey, 162 N.J. 375, 390 (2000) ("A report by a concerned citizen [is not] viewed with the same degree of suspicion that applies to a tip by a confidential informant.").

We add that in this instance, the citizen-informer not only provided his name to the 9-1-1 operator but also testified at the suppression hearing and was

13

subject to cross-examination by the defense. Both judges found him to be credible. We therefore accept the veracity of the information he provided to the 9-1-1 operator.

We next address defendant's argument that Officer Bull did not have reasonable suspicion to believe that defendant's truck was the vehicle the citizen-informer had observed driving erratically. We acknowledge that the description of the suspect vehicle that was given to the 9-1-1 operator and forwarded to Officer Bull was less detailed than the information that had been provided by the anonymous 9-1-1 caller in Golotta. As we have noted, in the present case, the citizen-informer did not provide the license plate number of the pickup truck he was following. Furthermore, there was a discrepancy between the color of the vehicle reported to the dispatcher and the actual color of defendant's truck. Both judges addressed that discrepancy and found it to be inconsequential given the light color of defendant's truck. We have no basis upon which to reject that finding, especially given that the officer testified credibly that the pickup truck could easily be mistaken for tan.

Considering the totality of the circumstances, we believe the citizen-informer provided adequate information that allowed Officer Bull to identify the suspect vehicle. Notably, the truck that Officer Bull identified was the only

14

pickup truck in the area of the intersection. Furthermore, the citizen-informer followed the suspect truck until he observed the police car at the intersection.

Finally, we address defendant's contention that because the officer lost sight of the pickup truck he had identified at the intersection, he did not have a reasonable and articulable basis to believe that the truck parked in defendant's driveway was the same vehicle the officer saw turn off Comly Road. We reiterate that the officer testified that he lost sight of the vehicle for only a few seconds and that there was no other vehicle on the road ahead. The officer thus drew a reasonable inference that the truck in the driveway was the same vehicle he had just begun to follow. Without equivocation, the officer testified that the vehicle in the driveway was "the exact same [one]" as the vehicle he had previously identified in the intersection. We reiterate that both judges found the officer to be a credible witness. In these circumstances, we do not hesitate to conclude that there was a reasonable and articulable basis for the officer to believe that defendant minutes earlier had operated his vehicle erratically and struck a sign, thereby justifying a motor vehicle stop to investigate suspected drunk driving and leaving the scene of an accident.

A-4581-19

To the extent we have not addressed them, any other arguments raised by defendant on appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION